## Commonwealth *v.* Dingman, Appellant.

*Criminal law—Motion to quash indictment—Illegality of arrest—Practice, Q. S.*

A prisoner may raise any questions touching the legality of his arrest upon a proceeding to be discharged from custody, but if he has given bail to answer the charge, he cannot after indictment found raise such questions by a motion to quash.

*Criminal law—Information—Indictment.*

It is not necessary that an information should charge the crime with the same detail and technical accuracy required in an indictment; if the essential elements of the offense be set forth in terms of common parlance, the information will be held to be sufficient.

*Criminal law—Larceny—Indictment—Information.*

When a defendant enters bail to answer the charge of having at a given time and place stolen personal property from the possession of a person named, he is presumed to know that the indictment founded upon the preliminary accusation will in legal language charge the crime of larceny and state the quantity of the goods, and aver the property to be in a certain owner.

*Criminal law—Indictment—Larceny—Time.*

If an indictment charges a man with a commission of a crime on divers

days, and only one day be particularly specified, it will be good, for only one penalty can be inflicted. A day certain being mentioned, the continuendo may be rejected as surplusage. An indictment containing four counts, no one of the counts charging more than one offense is good, if it avers that the offense was committed upon a certain day and upon divers other days not specified.

*Criminal law—Larceny—Stealing oil from pipe line—Married woman.*

Where a married woman owning oil wells managed by her husband enters into an agreement with a pipe line company by which oil from the wells is run into the pipe line, and the company is to return her, if requested, an equal quantity of oil, the husband of the owner may be convicted of larceny in stealing oil from the pipe line where the indictment charges that the oil was the property of the pipe line company.

*Criminal law—Larceny—Quantity of property—Indictment.*

Proof of the felonious taking of personal property to an amount either greater or less than that averred in the indictment will sustain a conviction.

*Criminal law—Larceny—Verdict—Amount and value of property.*

It is not necessary that a verdict finding a prisoner guilty of larceny should find also the amount and value of the property stolen.

*Criminal law—Larceny—Charge of court.*

On the trial of an indictment for larceny it is not reversible error for the court to say to the jury that if they believe the evidence of the witnesses of the commonwealth, "as to what they saw, and as to the admissions made by the defendant afterwards, we think you should conclude that the facts as charged in the indictment are sustained by the evidence."

*Criminal law—Evidence—Good reputation.*

Evidence of good reputation is substantive and positive and may raise a reasonable doubt as to the guilt of a defendant in a case where, in the absence of such evidence, such reasonable doubt would not exist. Evidence of reputation does not present a distinct issue; it is to be considered by the jury in connection with all the other evidence in the case in passing upon the general issue. When, upon consideration of the evidence of good reputation in connection with other evidence in the case, the jury are satisfied beyond a reasonable doubt of the guilt of the defendant it is their duty to convict. When a man, notwithstanding the fact that he previously had a good reputation and giving that fact due weight, has been clearly proved guilty, he is not to go free merely because of his former good reputation.

*Criminal law—Larceny—Stealing oil from pipe line—Evidence.*

On the trial of an indictment for larceny for stealing oil from a pipe line, it appeared that the prisoner controlled two oil wells owned by his wife, and that the product of the wells passed into a pipe line, and that the pipe line company gave credit for the oil received. The commonwealth offered to show that the prisoner adopted a device by which he drew from the pipe line quantities of oil, thus causing an apparent increase in the production of the wells, and that this device was used for several months at various times as opportunity offered. *Held,* that the evidence was properly admitted.

Argued Oct. 3, 1904.    Appeal, No. 13, April T., 1904, by defendant, from judgment of Q. S. Venango Co., Jan. T., 1904, No. 2, on verdict of guilty in case of Commonwealth v. J. H. Dingman.    Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER and MORRISON, JJ.    Affirmed.

Indictment for larceny.    Before CRISSWELL, P. J.
The opinion of the Superior Court states the case.
Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* appear by the opinion of the Superior Court.

*M. J. Heywang*, with him *Ash & Speer*, for appellant.—The indictment lacks definiteness and certainty as to time, place, circumstances and other essential matters : People v. Adams, 17 Wend. (N. Y.) 475 ; Commonwealth v. Bryden, 50 Mass. 137 ; Barnhouse v. State, 31 Ohio St. 39 ; State v. Temple, 38 Vt. 37 ; Cook v. State, 11 Georgia, 53 ; People v. Hamilton, 101 Mich. 87 (59 N. W. Repr. 401).

A man cannot be indicted for larceny of his own property from the bailee : Com. v. Tobin, 2 Brewster, 570.

The evidence of the prosecution should have been confined to the occurrences of the one day, November 7, 1903 ; and evidence of occurrences or takings on other days and times should not have been admitted against the objection of the defendant : People v. Adams, 17 Wend. (N. Y.) 475 ; Commonwealth v. Bryden, 50 Mass. 137 ; State v. Temple, 38 Vt. 37 ; State v. Kobe, 26 Minn. 148 (1 N. W. Repr. 1054) ; State v. Briggs, 68 Iowa, 416 (27 N. W. Repr. 358).

*H. McSweeney*, with him *J. L. McBride*, district attorney, and *J. H. Osmer & Sons*, for appellee.—A general or special property in a chattel is sufficient to sustain an indictment for larceny : Yates v. State, 18 Tenn. 548.

A man may steal his own property, if by taking it it is his intent to charge a bailee with it : People v. Stone, 16 Cal. 369 ; People v. Thompson, 34 Cal. 671 ; State v. Fitzpatrick, 9 Houst. (Del.) 385 ; Bruley v. Rose, 57 Ia. 651 (11 N. W. Repr. 629) ; Adams v. State, 45 N. J. L. 448 ; Palmer v. People, 10 Wend. (N. Y.) 165 ; Rex v. Wilkinson, Russell &

Ryan, 470 ; Reg v. Wadsworth, 10 Cox C. C. 557 ; Jones v. Jones, 71 Cal. 89 (11 Pac. Repr. 817) ; Henry v. State, 110 Ga. 750 (36 S. E. Repr. 55) ; People v. Long, 50 Mich. 249 (15 N. W. Repr. 105) ; State v. Crow, 54 Mo. App. 208 ; State v. McCoy, 89 N. C. 466.

The larceny with which the defendant is charged was a single and continuous offense from the time the pipes were put in place up to the time the defendant was arrested on November 7, 1903 : R. v. Brettel, C. & M. 609 (41 Eng. Com. Law Rep. 331) ; Lorton v. State, 7 Mo. 55 ; State v. Morphin, 37 Mo. 373 ; State v. Williams, 29 Tenn. 100 ; State v. Nelson, 29 Me. 329 ; Fisher v. Commonwealth, 1 Bush, 211 ; Jackson v. State, 14 Ind. 327 ; State v. Cameron, 40 Vt. 555 ; Commonwealth v. O'Connell, 94 Mass. 451 ; State v. Johnson, 3 Hill (So. C.), 1.

OPINION BY PORTER, J., December 12, 1904 :

The defendant was charged with stealing 2,000 barrels of oil from the pipe lines of the National Transit Company, and was convicted upon the first count of the indictment, which laid the property of the oil to be in the National Transit Company. The specifications of error which raise the question of the sufficiency of the information in which the prosecution originated may be considered together. The first information was made on November 7, 1903, and charged " that on November 7 and immediately heretofore a certain J. H. Dingman, of Titusville, Pa., did in the county of Venango, steal and appropriate illegally to his own use crude petroleum from the pipes of the National Transit Company ; " upon that information a warrant was issued, and the defendant was arrested and gave bail for a hearing. At the hearing, on December 21, 1903, a further and fuller accusation was made in writing, supported by the oath of the prosecutor, charging the defendant with the same offense, substantially in the following language : " On the 7th day of November, A. D. 1903, in the county of Venango, J. H. Dingman did feloniously take and carry away a large quantity of crude petroleum oil, to wit : two thousand barrels of great value, to wit : of the value of two thousand dollars, the property of the National Transit Company, with the intent to convert the same to his, J. H. Dingman's use,

without the owner's consent." The hearing proceeded and the defendant was held and gave bail for his appearance at the next court of quarter sessions to answer the charge. An indictment having been found the defendant moved to quash it upon the ground that the original information was insufficient, and his arrest upon the warrant thereunder issued was illegal. The indictment had been regularly found by the grand jury upon examination of witnesses, after information made before a magistrate and the entry of bail by the defendant to answer the charge. The defendant might have raised any question touching the legality of his arrest upon a proceeding to be discharged from custody, but having given bail to answer the charge he could not after indictment found raise such questions by a motion to quash: Commonwealth v. Brennan, 193 Pa. 567. The only question to be considered is whether the written accusation which the defendant gave bail to answer sufficiently informed the defendant that he might be put on trial for the crime charged in the indictment. It is not necessary that an information should charge the crime with the same detail and technical accuracy required in an indictment, if the essential elements of the offense be set forth in terms of common parlance the information will be held to be sufficient. The original written accusation, supported by oath, sufficiently informed the defendant that he was charged with having upon a day certain, in the county of Venango, stolen crude petroleum from the pipes of the National Transit Company. The time and place of the offense were accurately indicated, the property was described in general terms, although the quantity of the oil was not stated, and the taking was sufficiently alleged to have been from the possession of the National Transit Company. When a defendant enters bail to answer the charge of having at a given time and place stolen personal property from the possession of a person named, he is presumed to know that the indictment founded upon the preliminary accusation will in legal language charge the crime of larceny and state the quantity of the goods, and aver the property to be in a certain owner. The first and second specifications of error are dismissed.

The third, fourth, fifth and sixth specifications of error go to the form of the indictment, and not one of them is well

founded. The indictment contained four counts, in each of which the offense was laid "on the seventh day of November in the year of our Lord one thousand nine hundred and three, and on divers other days and times within two years last past before the finding of this inquisition." No one of the counts charged more than one offense, which was averred to have been committed upon a day certain and upon divers other days not specified. Had no day certain been laid the indictment would beyond question have been insufficient. Each count, however, does sufficiently charge the offense to have been committed upon a particular day. If an indictment charge a man with the commission of a crime on divers days, and only one day be particularly specified it will be good, for only one penalty can be inflicted. A day certain being mentioned, the continuendo may be rejected as surplusage : 2 Hawkins, P. C. book 2, chapter 25, sec. 82; 1 Chitty's Criminal Law, 218; People v. Adams, 17 Wendell, 475; Commonwealth v. Pray, 30 Mass. 359; Commonwealth v. Bryden, 50 Mass. 137. The first, second and third counts of the indictment charged the appellant with the larceny of 2,000 barrels of crude petroleum oil, but each count averred a different ownership of the property. The first count laid the property, without qualification, in the National Transit Company, "a corporation duly organized and existing under the laws of the commonwealth of Pennsylvania;" the second count laid the property in said corporation "bailee for divers persons to this grand inquest unknown;" and the third count laid the property in "divers persons to this grand inquest unknown." The averment as to ownership in an indictment for larceny is for the purpose of identifying the property. If there be any question as to the ownership of the property the larceny of which is charged, it is proper to insert counts charging the ownership in as many ways as there are parties interested : Wharton's Criminal Law, sec. 932. That a count charging the receiving of stolen goods may be joined with one charging the larceny of the same goods by the same defendant, is too well settled in Pennsylvania to require citation of authority.

The appellant was convicted upon only one count of the indictment, the first, which laid the property in the National Transit Company. The evidence disclosed that the wife of

the defendant was the owner of two small producing oil wells, the oil from which had from time to time been run into the lines of the National Transit Company, was placed to her credit upon the books of that corporation and the corporation had from time to time delivered oil to her or purchased her credit balances, in the manner in which the business of such companies is usually carried on. At the time of the alleged offense the wife of the defendant had a small amount of oil due her from the transportation company upon account of the production of said wells. The defendant controlled and managed the two small oil wells in question for his wife. It is now contended that the National Transit Company was, as to a part of the oil in its lines, merely a bailee for the wife of the defendant, and that even if the defendant did steal oil from the lines of the company he could not be convicted under an indictment which laid the property in the National Transit Company, as owner. The arrangement under which the oil of the appellant's wife was run into the pipe lines of the corporation did not contemplate that that specific oil should ever be returned, the corporation was not to return that oil but undertook to return, at a point upon its lines to be designated by the producer, oil of like quality with that received, when required so to do in the manner and subject to the conditions agreed upon. The agreement did not warrant the wife of the defendant or any agent on her behalf to take oil from the lines of the company without the knowledge of its officers. The taking being proved, the intention with which it was done was for the jury. A man may be guilty of felony in taking his own goods, as if he steals from a pawnbroker, or anyone to whom he has delivered them upon any bailment, when such taking is with intent to charge such bailee with the value ; or if he robs his own messenger on the road, with intent to charge the hundred with the loss, and in such a case the ownership of the property may be laid in the bailee : 4 Blackstone's Commentaries 231 ; see note to Sharswood's Edition ; 1 Hale, P. C. 513 ; 2 East P. C. 558 ; Roscoe's Criminal Evidence, 650 ; Rex v. Wilkinson, Russell & Ryan, 470, 478 ; Adams v. State, 45 New Jersey Law, 448 ; Palmer v. People, 10 Wendell, 165. The seventh, eighth, thirteenth, fourteenth and sixteenth specifications of error are dismissed.

The first count of the indictment charged the larceny of two thousand barrels of oil, but nothing is better settled than that proof of the felonious taking of the property described to an amount either greater or less than averred in the indictment will sustain a conviction. The larceny of numerous articles, feloniously taken in the same transaction, may be charged in the same count of an indictment, and the defendant may be convicted upon proof of such taking of any one of the chattels named. This rule works no hardship for the defendant, as he can be punished for but a single offense and cannot be again called upon to answer for stealing the same goods. It was not necessary that the verdict finding the defendant guilty should find also the amount and value of the oil stolen: Commonwealth v. Butler, 144 Pa. 568. The ninth and seventeenth specifications of error are overruled.

The language of the court in charging the jury which is the subject of the tenth specification of error when considered in connection with the testimony to which it referred, cannot fairly be construed as calling the attention of the jury to the fact that the defendant had not testified in his own behalf. The testimony of William V. Miller as to his conversation with the defendant clearly established that there were several other persons present at the time that conversation occurred. None of the persons named as present had denied that the conversation actually took place. The court was simply directing the jury to inquire whether the allegation of Miller as to what was said was true, and the suggestion that no one had denied the correctness of Miller's statement could only be fairly referred to the testimony of the witnesses who had been called; it certainly did not directly call the attention of the jury to the fact that the defendant had failed to testify, nor that he was a competent witness.

The questions of fact involved in the issue were fairly left to the jury. The language of the court complained of in the eleventh specification of error did not even involve an expression of opinion upon the part of the court as to whether the evidence produced by the commonwealth was true or untrue. The learned judge simply said to the jury that if they believed the evidence of the witnesses of the commonwealth, "as to what they saw and as to the admissions made by the defendant

afterwards, we think you would conclude that the facts as charged in the indictment are sustained by the evidence." This involved no limitation of the functions of the jury, who were left absolutely free to pass upon the issues of fact arising. under the evidence, and to draw therefrom any lawful inference.

While the language of the learned judge of the court below as to the effect to be given to evidence of good reputation of the defendant, was not so clear as might be desired, we are convinced that the jury could not have been misled as to the value of such evidence. Evidence of good reputation is substantive and positive and may raise a reasonable doubt as to the guilt of a defendant in a case where, in the absence of such evidence, such reasonable doubt would not exist. Evidence of reputation does not present a distinct issue, it is to be considered by the jury in connection with all the other evidence in the case in passing upon the general issue. When, upon consideration of the evidence of good reputation in connection with the other evidence in the case, the jury are satisfied beyond a reasonable doubt of the guilt of the defendant it is their duty to convict. When a man, notwithstanding the fact that he previously had a good reputation and giving that fact due weight, has been clearly proved guilty, he is not to go free merely because of his former good reputation. This is the only meaning that can be fairly attributed to the language used by the learned judge, and the twelfth and fifteenth specifications of error are overruled.

The remaining specifications of error, relating to the admission of testimony as to the amount of oil produced by the two wells in question and run into the lines of the National Transit Company, may be considered together. The appellant had, as the agent of his wife, been operating two small producing oil wells for a number of years, and the production had declined until the wells had become of little value. He determined to increase the revenue from the property, and adopted the method of secretly taking oil from the pipe lines of the National Transit Company, running it into the two wells in question, pumping it out of the wells again into the tanks and then selling it or running it into the lines of the Transit Company and receiving credit on the books of that corporation for the amount of oil so run. The purpose was to steal the oil

from the lines and sell it back to the company, the method adopted for concealing the theft and accounting for the possession of the oil was to increase the apparent production of the wells. The manner in which the scheme was carried into effect was to lay a pipe line, concealed under the edge of the belt-house in such a way that it could not be seen by a casual visitor, connecting with each of the wells and having a tee under the belt-house, from which point a connection was made with the pipe line of the National Transit Company by a short, small pipe which ran from the concealed tee to a pet-cock on a pump of the Transit Company's line. By opening the pet-cock the oil flowed from the lines of the Transit Company into the line constructed by the defendant and through the latter to the two wells ; stop-cocks being so placed as to cause the oil to flow at the pleasure of the defendant to either of the wells. When a visit from the representatives of the Transit Company was apprehended, the pet-cock was turned off, the small pipe running to the tee removed and nothing remained visible to attract attention to the device. The operation was carried on for some time and evidently with considerable profit. The apparent production of the two wells and the amount of the runs of oil from the tanks, with which they were connected, into the lines of the Transit Company gradually increased after the construction of the device above described, and that increase finally aroused the suspicions of the employees of the Transit Company. The oil was run out of the tanks on October 29, 1903, and the quantity left in each tank carefully gauged, at noon on that day ; the amount remaining in tank No. 2,257 being 11.32 barrels and in No. 2,313, 6.08 barrels. A number of the employees of the Transit Company visited the premises on November 7, 1903, and found the device for abstracting the oil from the lines of the Transit Company in operation, the small movable pipe running from the pet-cock on the lines of the company to the tee in the inch pipe line under the belt-house on the Dingman property in position, and oil running through it from the lines of the Transit Company into one of the wells on the Dingman property. The tanks were again gauged at noon on November 7 ; tank No. 2,257 was found to contain 91.32 barrels and tank No. 2,313, 26.04 barrels, an aggregate increase for the two tanks of 99.96 barrels for a period of nine days, or an

apparent production of 11.10 barrels per day for the two wells. The device for secretly taking the oil from the lines of the Transit Company was removed and the defendant arrested. The wells continued to be operated, the production was subsequently carefully gauged, and it was found that after the supply of oil from the lines of the Transit Company was cut off the production of the two wells aggregated 2.13 barrels of oil per day. The oil which the defendant took from the lines of the Transit Company could not be identified; after it had been run into the wells and pumped out again into the tanks it could not be distinguished from the oil naturally produced by the wells with which it was mingled. The defendant used the wells as the means for executing and at the same time concealing his theft. It was competent for the commonwealth to show that the oil pumped from the wells was not the natural production, and that the apparent production included a large amount of oil wrongfully taken from the lines of the National Transit Company. There is authority for holding that the construction of the device with the intention of using it for the purpose of a continuous apparent increase in the production of the wells, and the various takings of oil, as opportunity offered, in pursuance of such intention, are all to be considered as one transaction and a continuing offense : Regina v. Bleasdale, 2 C. & K. 765 ; The Queen v. Firth, L. R. 1 C. C. 172 ; 11 Cox C. C. 234. If this case be so regarded, then it was competent for the commonwealth to prove all that the defendant had done during the months that his device was in operation as a part of the offense with which he was charged. Even, however, if the appellant was guilty of a complete and distinct offense every time he placed his temporary pipe in position and turned the cock which permitted the oil to flow from the lines of the company, the evidence to which the defendant objected was competent upon the trial of this indictment. Generally speaking, it is not competent to prove a man guilty of one felony by proving him guilty of another unconnected felony, but where several felonies are connected together forming part of one entire transaction, then the one is evidence to show the character of the other : Rex v. Ellis, 6 Barnewall & Creswell, 145 ; Commonwealth v. Hutchinson, 6 Pa. Superior Ct. 405. All the evidence objected to tended to show that the prisoner

was guilty of the felony charged in the indictment. It went to show the history of the wells from the time the defendant first made them the vehicles of his theft until by the removal of the device which he had constructed the amount of the natural production of the wells was clearly demonstrated. The gauge tables showing the contents of the tanks in question had been accepted by the defendant and the National Transit Company as accurate in all the dealings between them, and they were properly admitted in evidence. They had been used in determining the amount of the production of the wells before the device was introduced, while it was in operation and after it was removed, and even if they had been inaccurate the effect of the inaccuracy was carried through all the measurements. They would still show the relative amount of the apparent increase in the production of the wells caused by the use of the device for abstracting oil from the lines of the National Transit Company.

The judgment is affirmed, and it is ordered that the appellant appear in the court below and by said court be committed for the term of his imprisonment which had not expired at the time this appeal was made a supersedeas.