# Commonwealth *v.* House, Appellant.

*Criminal law—Assault and battery—Contradiction of defendant's testimony—Incidental evidence as to another crime.*

Where the defendant on the trial of an indictment for assault and battery testified that he was at a particular place at a certain hour, and his testimony raises a doubt whether he could have reached the place of the assault at the time it was shown to have occurred, it is not reversible error to permit the commonwealth for the purpose of discrediting and contradicting the defendant to show that the defendant had not been at the place he designated, or at the time he had stated, but that he had been at another place near the place of the assault and at an earlier time, and this is so although the introduction of such evidence may incidentally show that he had committed another assault before he assaulted the prosecutrix.

*Criminal law—Charge—Adequacy of charge—Reference to evidence.*

It is not possible nor even desirable that the judge should refer to and emphasize every item of evidence on both sides in a way that counsel would consider adequate. In doing so he would run the risk of coming to speak as an advocate rather than a judge. Nor is he required to go over all the evidence on a particular point every time he refers to the point in the course of his charge. It is enough if he gives to the jury a general review of the evidence on the one side and the other, which fairly and adequately presents the respective contentions of the parties, with enough reference to the items of evidence to assist the

jury in recalling it as a substantial whole, and to appreciate its bearing.

*Criminal law—Reasonable doubt—Good reputation—Charge.*

On the trial of an indictment for a crime it is not reversible error for the court to charge as follows: "If there is such a doubt that prevents your arriving at a satisfactory conclusion of guilt, then the defendant is entitled to the benefit of that doubt. On the other hand,— still speaking about this evidence with relation to reputation,—if upon the other hand you are satisfied in view of all the evidence in the case that the defendant is guilty, then the fact that he has previously had a good reputation is not a defense, that is the material that you make use of in ascertaining whether or not he is guilty and if, looking at that and looking at all the other evidence in the case, you are convinced that this is the guilty man, then your duty is plain and simple."

Argued Oct. 7, 1907. Appeal, No. 17, April T., 1908, by defendant, from judgment of O. & T. Westmoreland Co., Feb. T., 1907, No. 12, on verdict of guilty in case of Commonwealth v. F. R. House. Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head and Beaver, JJ. Affirmed.

Indictment for assault and battery. Before McConnell, J.

The facts are stated in the opinion of the Superior Court.

When Emma Byers was on the stand the following offer was made:

Counsel for the commonwealth offers to prove by this witness that the defendant in this case attempted to assault her, or assaulted her on the porch of the house at the corner of East Pittsburg street and Alwine avenue about the hour of six o'clock on the evening of November 15, 1906. This for the purpose of contradicting the defendant, who denies having met anyone at that point, or having assaulted anyone at that point, or having been at that point at all at any time during that evening.

Mr. Ogden: This is objected to, for the reason that it tends to establish an entirely different crime, and is not material to the issue involved in this case.

The Court: This being offered in response to the defendant's testimony with respect to his whereabouts during the time of

his stay in Greensburg, his attention having been called to the particular circumstance on which this witness is called to testify about, it is admissible for the purpose named. The objection is therefore overruled. Exception noted.

"Q. Will you state to the court and jury where you were along about six o'clock of the evening of November 15, 1906? A. Well, I was through work about twenty-five minutes of six and whenever I was going home from work I was going up there by East Pittsburg street, and this young fellow was coming down and I was going on up putting on my gloves, and this here fellow he went upon a porch as if he was going to the door. Q. Whose porch, now? A. I don't know the people's name; the second house. Q. What house is it? A. The second house from Alwine avenue. Q. Is it the house at the corner of Alwine avenue and Pittsburg street? A. No, sir; the one up this way; high porch on it. Q. The one with a high porch on? A. Yes, sir; a high porch. He went up on the porch and as I got there he jumped down and grabbed me by the shoulders. Then I screamed and got loose from him, then he struck at me, then he run. Q. Is that man in court who assaulted you? Is he in court now? A. Yes, sir. Q. Who is it? A. There he sits (indicating). Q. Is this the man, the defendant here? A. Yes, sir. [3]

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* among others was (3) ruling on evidence, quoting the bill of exceptions; (4) that the charge as a whole was inadequate on the question of identity; and (6) portion of charge, quoted in the opinion of the Superior Court.

*Denna C. Ogden,* with him *John B. Keenan* and *Philip K. Shaner,* for appellant.—That the court erred in the third assignment of error, is found in Shaffner v. Commonwealth, 72 Pa. 60.

Upon the fourth assignment of error, we think the charge of the court was inadequate in not properly presenting to the jury the law and the evidence upon the question of identity;

the only dispute between the commonwealth and the defendant: Bryant's App., 176 Pa. 309; McCord v. Whitacre, 8 Pa. Superior Ct. 277; Ensminger v. Hess, 192 Pa. 432; Rice v. Com., 100 Pa. 28; Turner v. Com., 86 Pa. 54; Meyers v. Com., 83 Pa. 131.

The court erred in the sixth assignment, for good reputation is always a defense: Com. v. Sayars, 21 Pa. Superior Ct. 75.

*Chas. C. Crowell*, with him *John F. Wentling, Jr.*, district attorney, and *Wm. S. Rial*, for appellee, cited as to the sufficiency of the charge: Com. v. Zappe, 153 Pa. 498; Kuntz v. R. R. Co., 206 Pa. 162; Kehoe v. Traction Co., 187 Pa. 474; Com. v. Morrison, 193 Pa. 613; Burkholder v. Stahl, 58 Pa. 371; Blank v. Barnhart, 17 Pa. Superior Ct. 214; Provident Life & Trust Co. v. Philadelphia, 202 Pa. 78.

Cited as to good reputation as an element of defense: Com. v. Harmon, 199 Pa. 521; Com. v. Dingman, 26 Pa. Superior Ct. 615; Com. v. Miller, 31 Pa. Superior Ct. 309; Com. v. Brubaker, 13 Pa. Superior Ct. 14; Borham v. Davis, 146 Pa. 72; Serfass v. Dreisbach, 141 Pa. 142.

OPINION BY PORTER, J., July 15, 1908:

The testimony embraced by the first specification of error was admitted without an exception having been taken in the court below, and the specification is dismissed. The evidence offered by the defendant, the rejection of which is the subject of the second specification of error, was manifestly founded upon mere hearsay and it was properly excluded. The second specification of error is overruled.

The defendant had in his direct testimony given a minutely detailed statement of his whereabouts and actions between the time of his arrival in Greensburg and the time of the assault with which he was charged. This was manifestly deemed important by his learned counsel—and it would seem correctly so, to draw out the facts. The defendant had testified that during a considerable portion of the time which he spent in Greensburg he had been at the Fisher House, a hotel. There is no necessity for referring to his testimony as to his whereabouts during the earlier hours of the afternoon, but his testi-

mony was very specific as to his whereabouts and acts during the hour immediately prior to and including the time of the assault. He testified that he recalled taking a drink with a young gentleman at the bar of the Fisher House, that that was the last drink which he took there, and that that drink was taken at about five o'clock in the afternoon. The time having been thus fixed, the examination proceeded, after giving details not necessary to set forth, and the defendant testified as follows: "Q. That was the last drinking you did in Greensburg? A. That was the last drink I had in Greensburg. Q. You came upstairs and stayed in the hotel until about six or after six? A. A few minutes after six. Q. You went downstairs and washed your hands and Mr. Lewis was there? A. Yes, sir." Then followed certain details as to who helped him put on his overcoat, and then came this question and answer: "Q. You had some liquor in you. Well, when you left the Fisher House—what is your best judgment of the time you left the Fisher House? A. I left the Fisher House about ten minutes after six I should say." The prosecutrix, Miss Baker, had testified that the assault occurred on Saint Clair avenue, near East Pittsburg street. The store at which the prosecutrix was employed closed at six o'clock, she left the store a little after six o'clock, went along Main street to East Pittsburg street and down that street to Saint Clair avenue, where she separated from her companions, started home along Saint Clair avenue and was shortly afterwards taken hold of and stabbed. The assault must have occurred within a few minutes after six o'clock. If the testimnoy of the defendant, that he was at the Fisher House from five o'clock until ten minutes after six, was true, he might possibly have had time to reach Saint Clair avenue at the time the assault was committed, but his testimony, if the jury believed it, certainly tended to raise a doubt whether he had time after leaving the Fisher House to go to Saint Clair avenue and there quietly wait until the prosecutrix arrived. This being so, it was not reversible error, for the purpose of discrediting and contradicting his testimony, to permit the commonwealth to prove that the defendant had not been at the Fisher House during the time that he had stated, and that he

had at twenty-five minutes before six o'clock, been on East
Pittsburg street within a short distance of Saint Clair avenue
and had run in the direction of that street, although the intro-
duction of that evidence might incidentally show that he had
assaulted another female. The third specification of error is
overruled.

The fourth assignment, in which the charge as a whole is
brought up for review, avers that it did not adequately present
to the jury the law and the evidence upon the question of iden-
tity, that it failed to refer to the fact that another man was seen
to flee from the place of the assault immediately after the oc-
currence, and that it limited the question of reasonable doubt
to that which grew out of the evidence of good reputation alone.
With reference to the first complaint, we deem it only necessary
to quote the language used by the learned judge of the court
below in his charge: "But where the emphasis of this case does
rest is upon the question of whether the defendant in this case
has been the guilty agent in committing these assaults. It is
not enough that some one has done this. It must be this de-
fendant in order that he be found guilty, because the inquiry
that we are prosecuting here is prosecuted for the purpose of
ascertaining whether or not we have before us the man upon
whom the heavy hand of legal punishment should be laid for
his discipline and for the example of others. That of course
makes it essential that it appear from a consideration of the
whole case that this was the man who perpetrated those of-
fenses on that day." This was certainly a clear and full pre-
sentation of the controlling issue of fact in the case, the identity
of the defendant with the perpetrator of the offense. As to
the complaint of the failure of the court to refer to a certain de-
tail of the evidence, it is only necessary to say that the jury
could not have failed to understand the relevancy of the evi-
dence referred to. The learned judge did not in his charge
pretend to review the evidence in detail, and said to the jury
that he was referring to it "only in vague outline." It has not
been suggested that the reference to the facts was partial or
one-sided, and a careful study of it has convinced us that it
was absolutely fair. The learned judge after referring to many

of the points in the evidence favorable to the defendant said:
"In addition to these circumstances and many others that will
occur to you, he calls to his aid the testimony of persons who
have known him before."  And again, referring to the questions
of fact: "You are the court of final appeal.  The judge of this
court has not anything to do with the determination of that
question.  The law trusts you to do that which is just to every
citizen of the commonwealth and just to the defendant, who
is as much under the protection of the laws of the common-
wealth as any one else."  It is not inappropriate in this connec-
tion to quote the remarks of the Supreme Court in Common-
wealth v. Kaiser, 184 Pa. 493: "It is not possible nor even
desirable that the judge should refer to and emphasize every
item of evidence on both sides in a way that counsel would
consider adequate.  In doing so he would run the risk of coming
to speak as an advocate rather than a judge.  Nor is he required
to go over all the evidence on a particular point every time he
refers to the point in the course of his charge.  It is enough if
he gives to the jury a general review of the evidence on the one
side and the other, which fairly and adequately presents the
respective contentions of the parties, with enough reference to
the items of evidence to assist the jury in recalling it as a sub-
stantial whole, and to appreciate its bearing."  The charge
delivered by the learned judge in the case at bar fully meets
this test.  The complaint that the charge limited the question
of reasonable doubt to that which grew out of the evidence of
good reputation alone is not well founded.  The court said,
upon the general question: "This defendant when he came into
court here, and you were sworn to be his triers, was an innocent
man.  Every man is so presumed until the proofs in the case
remove that presumption," and again, in the concluding por-
tion of the charge: "There is a substantial thing to be dealt with
here and that substantial thing is the question of the defend-
ant's guilty agency in the perpetration of this offense.  If he is
not guilty you should say so.  The commonwealth don't ask
for conviction about which there is a reasonable doubt. . . .
While we keep this in mind we are not to act rashly from any
impulse of the heart that our own minds do not follow and thus

conclude that this is the guilty man, unless the evidence in the case justifies that conclusion, leads you to that conclusion beyond a reasonable doubt." The fourth specification of error is overruled.

The record having been remitted by this court to the court below for correction and having been returned properly certified, the fifth specification of error has no foundation in the record as it now stands.

The sixth specification assigns for error the following language of the court, used when charging the jury as to the effect of evidence of good reputation,—"On the other hand,—still speaking about the evidence with relation to reputation, if upon the other hand you are satisfied in view of all the evidence in the case that the defendant is guilty, then the fact that he has had a good reputation is not a defense." Had this been all that the learned judge said upon the subject it might have been fairly subject to the criticism, by the Supreme Court, of the charge in Commonwealth v. Cate, 220 Pa. 138, that: "It would be confusing to jurors and might lead them to disregard evidence of good character altogether, if from all the other evidence in the case they reached the conclusion that the defendant was guilty. This would clearly be error." The specification of error in the present case, however, wrests a single sentence of the charge from the context, while the charge as a whole is clear and unambiguous. A complete answer to the construction attempted to be put upon this single sentence, by the specification of error, is to be found in the immediate context. The learned judge, having in the opening of his charge stated as strongly as could be desired the legal presumption of the defendant's innocence until that presumption was overcome by proofs, used the following language when instructing the jury as to the effect of testimony as to the good character of the defendant: "For that very reason it is then when a man is so attacked, and he has hitherto deported himself as to give his neighbors a good opinion of him in that respect, that he may call on that good opinion and bring it in here as part of his defense. Although it is different in character from the other testimony in the case, it is not to

be regarded as a mere makeweight to be thrown carelessly into a case, but is a part of the testimony that is to be considered in the case, because, as we shall presently tell you, it is the business of the commonwealth to make out a case beyond a reasonable doubt, and it may be in some cases, that where a man has previously borne a good reputation, and that is shown to the jury, that the existence of that good reputation may of itself generate a reasonable doubt in your minds as to whether he was the guilty man or not. That is one of the items of evidence in the case and it is to be considered along with the other evidence in the case.'' The charge then proceeds to define a reasonable doubt, and does so in a manner of which even this appellant does not complain. Having thus satisfactorily explained the nature of a reasonable doubt, the court recurred to the effect of such a doubt resulting from the introduction of evidence as to good character, and in this part of the charge occurs the sentence assigned for error. The whole of this part of the charge is in the following language: ''If there is such a doubt that prevents your arriving at a satisfactory conclusion of guilt, then the defendant is entitled to the benefit of that doubt. On the other hand,—still speaking about this evidence with relation to reputation,—if upon the other hand you are satisfied in view of all the evidence in the case that the defendant is guilty, then the fact that he has previously had a good reputation is not a defense, that is the material that you make use of in ascertaining whether or not he is guilty and if, looking at that and looking at all the other evidence in the case, you are convinced that this is the guilty man, then your duty is plain and simple.'' These instructions certainly made it clear to the jury that they were to consider good character, if established, as a substantive fact, which might of itself give rise to a reasonable doubt of the guilt of the defendant and entitle him to an acquittal; that they were not to consider the testimony of good character as a mere makeweight, but were to weigh it with all the other evidence in the case in determining the question whether or not the defendant had been proved guilty beyond a reasonable doubt. That it, testimony as to good character, was the material that they

372 COMMONWEALTH *v.* HOUSE, Appellant.

Opinion of the Court—Dissenting Opinion. [36 Pa. Superior Ct.

were to make use of in ascertaining whether or not he was guilty, and that they must look at that and all the other evidence in the case in passing upon the question. The charge upon this branch of the case was a correct statement of the law: Commonwealth v. Eckerd, 174 Pa. 137; Commonwealth v. Harmon, 199 Pa. 521; Commonwealth v. Beingo, 217 Pa. 60; Commonwealth v. Dingman, 26 Pa. Superior Ct. 615; Commonwealth v. Miller, 31 Pa. Superior Ct. 309. The sixth specification of error is overruled.

The judgment is affirmed, and it is ordered that the defendant appear in the court below and that he be by that court committed to serve such part of his sentence as had not been performed at the time this appeal was made a supersedeas.

MORRISON, J., dissenting:

The third assignment of error raises the question of the competency of the rebuttal testimony of Miss Emma Byers in substance that on the evening of November 15, 1906, at twenty-five minutes before six o'clock, the defendant assaulted her at the corner of East Pittsburg street and Alwine avenue, in Greensburg. This was at a different time and place than the assault on Miss Baker, and it was in no way connected with the latter assault, which occurred on St. Clair street a few minutes past six o'clock, nor was it material as to the identity of the person who assaulted Miss Baker. In short, the assault on Miss Baker was a separate and independent crime and, in my opinion, no sufficient reason appears to warrant the admission of Miss Byers' testimony in rebuttal, while the defendant was on trial for assaulting Miss Baker. I think this evidence ought to have been excluded and the jury cautioned not to be influenced by the offer. The testimony of Miss Byers was admitted on the theory of contradicting the defendant. The assault on Miss Byers was not at the time and place of the assault on Miss Baker and the former knew nothing material about the assault on the latter. I think the testimony of Miss Byers was very prejudicial to the defendant and that it was illegal. It was offered in rebuttal, after the defendant had gone on the stand and admitted his presencce so near the place

of the Baker assault, at the time it was committed, that it was quite apparent that he might have been her assailant. Moreover, there was plenty of other evidence, already in, that the defendant was where he might have assaulted Miss Baker. In my opinion, the proof of the Byers' assault was so in conflict with the general rule on this subject that citation of authorities hardly seems necessary. That there are exceptions to the general rule is not important because I can discover nothing in the evidence to take this case out of the rule. It is difficult for me to escape the inference that the representatives of the commonwealth sought to get before the jury some evidence that the defendant committed a similar crime shortly before the alleged assault on Miss Baker, for which he was on trial. I think proof of a separate and distinct crime was allowed without any sufficient reason whatever. See Shaffner v. Commonwealth, 72 Pa. 60. I would sustain this assignment.

The sixth assignment of error is from the charge as follows: "On the other hand,—still speaking about the evidence with relation to reputation,—if upon the other hand, you are satisfied in view of all the evidence in the case, that the defendant is guilty, then the fact that he previously had a good reputation is not a defense." The question here is how would the jury be likely to understand this summary of the law by the court. I think there is danger that it was understood to withdraw from their consideration the evidence of good character, if all the other evidence satisfied them of the guilt of the defendant; and it may have, practically, been an instruction to the jury that they could find him guilty from the weight of the evidence without giving him the benefit of a reasonable doubt. It is true that the learned court had previously told the jury, in the charge, that the defendant was entitled to the benefit of a reasonable doubt, yet it is likely that this summary (sixth assignment) may have found a lodgment in the minds of the jury and influenced them to find a verdict on the weight of the evidence, disregarding the reasonable doubt and dismissing the evidence of reputation as no longer presenting a defense. The defendant had made a strong showing in favor of his good reputation as a peaceable, law-abiding citizen. If

the jury believed the evidence as to his character and reputation, they were asked to find that a young man of good education and excellent reputation, up to November 15, 1906, had on that day attempted to murder a young lady, an entire stranger to him, on a public street in Greensburg, without any apparent motive. It would probably seem to the jury unnatural and unreasonable to suppose him guilty. Surely then, in his hour of peril, he was entitled to have the court accurately instruct the jury as to the effect of evidence of good character as well as the rule of law on reasonable doubt.

The learned counsel for the commonwealth cites Commonwealth v. Miller, 31 Pa. Superior Ct. 309; Commonwealth v. Eckerd, 174 Pa. 137; Commonwealth v. Harmon, 199 Pa. 521; Commonwealth v. Dingman, 26 Pa. Superior Ct. 615, and argue from these authorities that the learned court did not err as alleged in the sixth assignment. But each and all of these cases and many others that might be cited, hold that the jury should be told, "that evidence of good character is substantive and positive proof in the prisoner's behalf, and may give rise to a reasonable doubt, which would not otherwise exist, by making it improbable that a man of such character would commit the offense charged; but when the jury is satisfied beyond a reasonable doubt under all the evidence, that the defendant is guilty, evidence of previous good character is not to overcome the conclusion which follows from that view of the case."

No case has been cited and I have found none, satisfying me that the court's instructions to the jury (sixth assignment) ought to be sustained. I cannot agree that the evidence of good reputation on behalf of the defendant would ever cease to be a substantive defense till a verdict was found. It might not be sufficient in the opinion of the jury, to overcome the other evidence and raise a reasonable doubt, and work an acquittal, but the defendant was entitled to have it correctly submitted to the jury. There were several other items of evidence that might have gone on the scales with the evidence of good reputation, and, together, they might have raised a reasonable doubt. But if the case of Commonwealth v. Cate,

220 Pa. 138, is to be followed something more is required than has been heretofore understood by many judges from the cases last above referred to.   In the latter case, the learned judge below charged that "where the jury is satisfied beyond a reasonable doubt of the defendant's guilt under all the evidence, evidence of previous good character is not to overcome the conclusion which follows from that view of the case."   Of this instruction the Supreme Court said: "While this instruction might be understood by the legal mind as fairly within the rule above stated, it would be confusing to jurors and might lead them to disregard evidence of good character altogether, if from all the other evidence they reach the conclusion that defendant was guilty.   This would clearly be error.   Under these circumstances we cannot say no harm was done appellant in this respect although the case in other respects was tried with exemplary care and the rulings of the learned trial judge were fair and impartial.   For this reason the judgment must be reversed."

It is contended that the court did properly instruct the jury in other portions of the charge, but that does not render harmless what I regard as error stated in the sixth assignment: "Where the court, in its charge to the jury, states the same proposition of law twice, the first time correctly, the second time incorrectly, it will be inferred that the latter statement is likely to have made a lodgment with the jury, and in some instances, the judgment will be reversed on this ground: Syllabus of Rice v. Commonwealth, 100 Pa. 28.

I would sustain the third and sixth assignments of error, and reverse the judgment and remit the record to the court below for a new trial of the defendant.

HENDERSON, J., unites in this dissent.