## Commonwealth v. Nelson et al.

*Lindley R. McClelland*, Assistant District Attorney, for Commonwealth.

*George W. Schroeck*, for defendants.

LAUB, J., June 21, 1951.—We have here two separate petitions to quash the proceedings had before one of the

aldermen of the City of Erie.[1] From the transcripts of the magistrate it appears that these defendants were separately charged with assault and battery and that, after hearing, both were held for quarter sessions court. No recognizance was entered into by defendants following the magistrate's action, no indictment has been found, and there has been no action by defendants, other than that which took place before the justice, which can be construed as a waiver of their rights to enter technical objections to the proceedings up to this time. Since both petitions embrace the same complaint and since the alleged defect in the proceedings obtains in both instances, we shall simultaneously dispose of both rules entered upon the petitions.

---

[1] The original petitions were to quash the warrant of arrest but they have been transmuted by agreement with the district attorney into "Petitions to Quash Proceedings". We confess to some doubts as to the propriety of such action. It is true that Judge McDade, in Commonwealth v. Beerson et al., 49 D. & C. 609, 610, stated:

"If the question were to be raised as to any irregularity in the proceedings, it could have been raised by obtaining writs of habeas corpus or by motions to quash the return of transcript of the committing magistrate."

It is likewise true that our appellate courts have apparently recognized the power of the trial courts to quash search warrants illegally issued (see Commonwealth v. Loesel et al., 155 Pa. Superior Ct. 461) but the true rule seems to be that the only way to attack improper proceedings had before a committing magistrate is by some sort of action to be discharged from custody or by habeas corpus. The rule was stated in Commonwealth v. Brennan, 193 Pa. 567, 569, and has been followed since by Commonwealth v. Murawski, 101 Pa. Superior Ct. 430, 431, and Commonwealth v. Lingle, 120 Pa. Superior Ct. 434, 436. See also Commonwealth v. Dingman, 26 Pa. Superior Ct. 615; Commonwealth v. Hans, 68 Pa. Superior Ct. 275; Commonwealth v. Keegan, 70 Pa. Superior Ct. 436. This might seem to be a harsh rule since the implication is that defendant must submit to custody and then apply for discharge therefrom. However, it may be that such is one of the prices which must be paid for citizenship in a free nation. As stated by Blackstone, book 3, ch. 26 (quoting from Montesquieu) ". . . in all governments . . . the formalities of law increase, in proportion to the value which is set on the honor, the fortune, the liberty and life of the subject."

Many defects are alleged in the manner in which the alderman conducted the preliminary proceedings but all of these except one have been abandoned by petitioners. It is now conceded that the sole question to be decided by us relates to the refusal of the alderman to grant defendants a trial by jury of six as provided in the Act of May 1, 1861, P. L. 682, sec. 3, 42 PS §725.

The transcripts of the alderman are substantially identical in their material aspects. The Nelson transcript reveals that he was charged on October 13, 1950, with an assault and battery on John W. O'Hara. Nelson was arrested the same day and, after hearing the information read to him, pleaded not guilty. A hearing was then fixed for October 19, 1950, and bail fixed at $500. Defendant posted bail as required but did not appear for hearing on October 19th due to illness. The alderman continued the hearing and later fixed November 10, 1950, as the time for the same. At that time defendant appeared with his counsel and the hearing was started. Counsel for defendant interrupted the prosecution in the examination of the first witness and demanded a jury trial as provided in the Act of 1861, supra. This demand was accompanied by the further demand that such trial be held the following day.[2] The alderman, apparently in doubt as to the proper procedure, continued the case until November 28, 1950. At the hearing held that day defendant refused to cross-examine witnesses or to offer a defense. The alderman then reserved his decision for one week. On the day fixed for his decision neither defendant nor his counsel appeared and the alderman held defendant for court. Defendant later promised the alderman to appear and post bond but to date he has not done so.

In the Kester case the record shows that on Novem-

---

[2] An obvious impossibility under the Act of 1861 or its supplements.

ber 3, 1950, William W. Wotochek made an information before the alderman charging David Kester with assault and battery. Kester was arrested the same day and brought before the magistrate where, after the information was read to him, he pleaded not guilty. The alderman established November 10, 1950, as a hearing date and fixed bail in the amount of $600, which was then furnished by defendant. On November 10, 1950, defendant and his counsel appeared and the case was continued by the alderman until November 28, 1950. On the latter date a hearing was held which was attended by defendant and his counsel. It was at this hearing that defendant demanded a jury trial for the first time. When the request was denied, defendant refused to cross-examine witnesses or to testify. The alderman then reserved his decision for one week and later at the time specified held defendant for court. Defendant and his counsel were not then present but defendant later agreed to appear and sign a bond. This he has not done.

The Commonwealth urges that the Act of 1861, supra, has been repealed by implication in that this act applies to certain offenses "mentioned" in the Criminal Code of 1860. It points out that assault and battery under the Act of March 31, 1860, P. L. 382, sec. 97, was a comparatively minor offense carrying with it a possible maximum sentence of $1,000 and one year in prison. Under our present Penal Code of June 24, 1939, P. L. 872, sec. 708, 18 PS §4708, the maximum fine remains the same but the imprisonment has been increased to two years. In consequence, although the elements of the offense of assault and battery remain unchanged, the penalty is materially increased. The Act of 1861, in its ninth section, provides for sentence by the magistrate upon a verdict of guilty by the jury of six with like effect as if defendant had pleaded guilty

or been convicted in the court of quarter sessions. It is argued that obviously the Act of 1861 was intended to apply to assault and battery which carried a maximum sentence of one year and not to assault and battery which carries a maximum sentence of two years. It is further pointed out by the Commonwealth that The Penal Code of 1939 expressly repealed the Act of 1860, supra, and that therefore, for all practical purposes, there is no such act and, in consequence no foundation upon which to build a jury trial as prescribed by the 1861 statute.

Appealing though it may be, we are not willing at this time to succumb to the Commonwealth's almost persuasive argument. Repeals by implication are not favored by the law (H. C. Frick Coke Company Appeal, 352 Pa. 269, 274) and it has been stated that courts will not hold that there has been such a repeal if they can avoid doing so: Kingston Borough v. Kalanosky et al., 155 Pa. Superior Ct. 424, 427.

Controlling in this case is defendants' failure to comply with the provisions of the very act which they seek to invoke. It was always contemplated by the Act of 1861, supra, that defendants who desired to be tried by a jury of six had to demand the right upon the occasion of being first brought before the justice after arrest. It was then prescribed that the justice should continue the case to the next ensuing monthly court and to forthwith issue a venire to the constable to summon the jury. This is clearly indicated by sections 2 and 3 of the statute, which deal with the duties of the justice when the arrested person is brought before him. Section 2 covers the situation where the accused shall plead guilty upon hearing the charge read to him, and section 3 establishes the practice where the plea is "not guilty". This latter section is divided in two parts: one part which deals with a not guilty plea

accompanied by a demand for a jury trial, and the other a not guilty plea without such demand.

It will be observed that under this act delays were made necessary by reason of the fact that the trial had to be held at the next ensuing monthly court. Evidently the legislature deemed this undesirable for, by the terms of the supplementing Act of April 5, 1862, P. L. 274, 42 PS §§726, 727, 730, monthly courts were abolished and provision was made for trial not less than 4 nor more than 10 days following arraignment. An additional provision for expedition was supplied by the third section of the supplementing act which provides for the selection of the jury on the day on which defendant shall first be brought before the justice if both parties are there present.

To hold that a defendant could demand a jury trial before a justice at any time, regardless of the plain intent of the act, would be to open the door for intolerable practice. It is not only that additional delay could be obtained by a defendant who chooses to wait until the hearing date to demand his trial, but other and more serious prejudice could result.[3] If a complainant, in full confidence that his cause would be adjudicated, employed counsel, subpoenaed witnesses and presented himself for hearing and was then suddenly confronted with more delay and the prospect of having once again to gather his witnesses, pay additional counsel fees and perhaps lose more time from his employment, the cause of justice and the rights of the individual citizen would be seriously impaired.

Assault and battery is an offense almost universally held in contempt by the legal profession as an insig-

---

[3] In Commonwealth v. Flood, 302 Pa. 190, 196, the Supreme Court said:

"Persons accused of crimes should be brought to as speedy a trial as the exigencies of their cases demand, otherwise one of the benefits accruing to society will be lost or seriously diminished."

nificant and unimportant aspect of our criminal law. Sight is often lost of the fact that assault and battery has a broad range from the simple punch in the nose to a severe beating which closely approximates its more serious brother, aggravated assault and battery. This has been recognized by the legislature and has found expression in the increased penalty noted above. We can no longer be overcharitable in our appraisal of the offense. A reading of Commonwealth v. Krolak et al., 164 Pa. Superior Ct. 288, wherein five innocent citizens were separately attacked and beaten by three young men for no other purpose than to exhibit unnatural brutality, demonstrates the extreme importance of the proscriptions against assault and battery. The assaults in that case were characterized by Judge Fine, now Governor of the Commonwealth, as ". . . unprovoked and utterly devoid of a modicum of decency or fair play and were the offspring of thugs cowardly exercising care to spot victims who were unaccompanied and who were therefore unable to cope with the terrific odds posed by the three ruffians."

It is therefore apparent that notwithstanding the current judicial fashion to construe the law more favorably to a defendant than to the society of which he is a part, aggrieved citizens have rights which are equally entitled to recognition.

The Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 58, 46 PS §558, calls for strict construction of prior statutes which are in derogation of the common law. A jury of six for the trial of misdemeanors did not obtain at common law, and assault and battery was indictable: Blackstone, book 4, ch. 15, *216, V, VI, VII. Furthermore, section 1104 of The Penal Code, supra, provides, inter alia:

"In all cases where a remedy is provided or duty enjoined, or anything directed to be done by the penal

provisions of any act of assembly, the direction of said act shall be strictly pursued. . . ."

We consider that the Commonwealth is equally entitled to the benefits derived from these statutes and that therefore, since these defendants did not demand a trial by a jury of six at the time of their first appearance before the justice, they automatically waived their right to demand it at a later date.

And now, to wit, June 21, 1951, the rule granted in each case January 4, 1951, is discharged.

And now, to wit, June 21, 1951, it appearing that the petitions to quash the proceedings were given separate numbers from the proposed indictment numbers in the office of the clerk of quarter sessions, for the purposes of these cases the same shall be consolidated as follows: November term, 1950, no. 186, is consolidated with February sessions, 1951, no. 83, and November term, 1950, no. 185, is consolidated with February sessions, 1951, no. 82.