Commonwealth *v.* Hilbert, Appellant.

Argued September 18, 1959. Before GUNTHER, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., and HIRT and WRIGHT, JJ., absent).

*David Freeman,* with him *Harry P. Creveling,* for appellant.

*Paul A. McGinley,* District Attorney, for appellee.

OPINION BY GUNTHER, J., November 11, 1959:

Robert S. Hilbert was tried in Lehigh County on two bills of indictment as follows: No. 128 September Sessions, 1958 charged larceny by an employe and fraudulent conversion, and No. 129 September Sessions, 1958 charged embezzlement. After several days of trial, verdicts of guilty on all counts were returned by the jury. Motions for new trial and in arrest of judgment were filed and overruled and on July 7, 1959, he was sentenced to a term of one year imprisonment on each bill of indictment, sentences to run concurrently. From these judgments, defendant has appealed.

Defendant was financial secretary and treasurer of Local No. 1174 of the International Hod Carriers, Builders and Common Laborers Union of America. As a result of the audit of his books, it was discovered that certain shortages occurred in his accounts which could not be explained away. As a result, defendant was relieved of his office in May, 1958, and criminal informations were lodged against him. Robert L. Leonard, a certified public accountant, detailed the methods used by his accounting firm in arriving at the shortages for the period from January 1, 1958 to March 31, 1958.[1] Bank statements showing the balance on

---

[1] Actually, the indictments charged larceny and embezzlement of over $14,000.00 from April 1, 1955 to March 31, 1958, but proof was limited to a period of two years from the date true bills were found. This ruling created complications because the accountant's audit covered a larger period and items more than two years old could not be separated from items less than two years old. A separate audit covering the period January 1, 1958 to March 31, 1958 was made, which indicated that over $2,100 had been taken within that period.

January 1, 1958 and on March 31, 1958 were admitted into evidence. In addition to the bank statements, the certified public accountant wrote directly to the bank and asked and received confirmation as to the amount of credit the union had in the bank on the dates in question. Allowances were made for outstanding checks and cash found in defendant's cash box but the audit still disclosed a shortage of $2,177.21 for the period in question.

On this appeal, defendant contends (1) that the evidence was insufficient to convict him of the crime charged; (2) that the charge of the court below on reasonable doubt was erroneous as a matter of law; (3) that the refusal to grant a bill of particulars was prejudicial and an abuse of discretion, and (4) that his constitutional rights were violated in that he was not given a bill of particulars and no opportunity was given to examine the union's books to determine the accuracy of the auditor's reports before trial. We shall consider these objections in the order raised.

(1) In *Commonwealth v. McSorley,* 189 Pa. Superior Ct. 223, 150 A. 2d 570, we have stated that the Act of June 15, 1951, P. L. 585, 19 P.S. section 871, imposes upon the court the duty to consider the entire record to determine whether there is sufficient evidence to establish the guilt of the defendant. As we view this record, we are satisfied that the evidence presented and believed by the jury was sufficient to sustain the verdicts. The bank balances on the respective dates in question, compared with the books under the control of the defendant, clearly disclosed a substantial shortage. The cash box, in which monies were kept until deposited, were in the exclusive control of the defendant and the keys to it were kept by him. Any removals of cash from this box were made by him. Rent checks were paid to the union and were deposited in

the bank account but were not debited against the treasurer upon his books. When the audit was made, defendant reported that these checks, in the amount of $1,250.00, were deposited in a special account whereas they had been deposited in the regular account. Defendant admitted that he procured a duplicate of an old receipt book so that he could insert his own name in place of that of another member to show that his dues were paid in full. Checks drawn to cash were entered as credits but when they were redeposited or cashed, they were not entered as debits. The books under the control of the defendant were made to balance, but the cash disappeared.

The defense was to the effect that defendant was ignorant of bookkeeping; that all receipts and deposits were double checked with the bookkeeper and that a third key, not known to the defendant, turned up in the cash box. It is urged here that there was no proof that all receipts taken in, between January and March, 1958, were actually deposited because the Commonwealth's testimony was to the effect that the receipts of the union were held for as long as one or two weeks before deposit and, therefore, monies received prior to March 31, 1958 could have been in the strong box. Attack is also made on the bank balances and verifications for the reason that the bank could not know what checks had or had not been paid. All these matters, of course, were for the consideration of the jury and, apparently, the jury disbelieved these defenses. Furthermore, this evidence, even if believed by the jury, would have shown merely that the amount of money missing was less than that claimed by the Commonwealth. For the purpose of substantiating the charge, it didn't make any difference how much money was stolen or embezzled so long as the proof established that some of it was stolen or embezzled. Proof of the

felonious taking of personal property to an amount either greater or less than that averred in the indictment will sustain a conviction. *Commonwealth v. Dingman,* 26 Pa. Superior Ct. 615. The evidence clearly disclosed defalcations in the account and the circumstances pointed a strong finger at the defendant. We believe the evidence was sufficient to justify the verdict.

(2) The charge of the court below on reasonable doubt was, inter alia, as follows: "Now the kind of a doubt that would justify you in acquitting the defendant of whose guilt you were otherwise convinced, as has been said to you, may not be a kind of doubt that you conjure up in your mind, perhaps to avoid doing an unpleasant duty, but it must be the kind of doubt that arises naturally and logically from the evidence that you have heard—the kind of doubt that would cause you to act in a matter of importance to yourself. Now you will apply those rules to the evidence you have heard." No request was made for additional instructions on reasonable doubt, and it is now claimed that this charge was fundamentally erroneous. The charge, as set forth, meets one of the standards set forth in *Commonwealth v. Kluska,* 333 Pa. 65, 3 A. 2d 398. In the absence of fundamental error, objection to the charge cannot be made for the first time on appeal. *Commonwealth v. Kopitsko,* 177 Pa. Superior Ct. 161, 110 A. 2d 745; *Commonwealth v. Ricci,* 161 Pa. Superior Ct. 193, 54 A. 2d 51. A party may not sit silent and take his chances on a verdict and, if it is adverse, complain of a matter which could have been amplified or, if in some manner deficient, corrected. *Commonwealth v. Kopitsko,* supra. We do not find the charge fundamentally wrong and, therefore, this objection is without merit.

(3) The request for a bill of particulars was made by counsel after the jury was sworn and the Common-

wealth made its opening statement to the jury. Under such circumstances, there was no abuse of discretion in the court below for refusing to grant the motion. Such a request, even where the proper foundation is laid for granting the same, must be made before the case proceeds to trial. Here, issue was joined, the jury picked and the trial actually commenced before the request was made. Defendant and his counsel were present at the preliminary hearing and heard the prima facie case presented by the Commonwealth. Under such circumstances there is no necessity for a bill of particulars. *Commonwealth v. Eagan,* 190 Pa. 10, 42 A. 374. Notwithstanding this, if defendant still felt that his defense would be prejudiced without a bill of particulars, he should have asked for it prior to trial.

(4) Defendant urges that his trial was in violation of Article I, section 9 of the State constitution as well as in violation of the Fourteenth Amendment of the Constitution of the United States. Apparently, the basis for this assertion is the failure to grant the bill of particulars and the commencement of his trial the day after true bills were returned. We have disposed of the refusal to grant the motion for a bill of particulars and, in passing, note that the refusal to grant a bill of particulars is not a violation, ipso facto, of either the State or the Federal Constitutions. There is no constitutional right to a bill of particulars.

The chief complaint under this objection centers around the lack of time for preparation for trial between the date of indictment and date of trial. However, the record clearly discloses that defendant had engaged counsel as early as the preliminary hearing and that counsel actually participated in such hearing. Defendant knew he was bound over for court and that he would be required to prepare his defense prior to his case being called for trial. He was informed of

the charges against him and the basic evidence upon which the Commonwealth relied to sustain the charge. Under such circumstances, he was required to take some appropriate steps to meet such accusation. While it is true that the formal accusation is the indictment, an accused cannot wait until the indictment is returned to prepare his defense. If a true bill is found, he should be ready to proceed to trial; if the bill is ignored, he merely makes no use of his preparation.

Persons who are accused of crime should be brought to as speedy a trial as the exigencies of their case demand. This is a right guaranteed by our Constitution. The court which is charged with the responsibility of administering criminal law should not be hindered in its effort to bring the case of an accused to a speedy trial. It should not permit any but a just and sufficient cause to delay the trial. *Commonwealth v. Gossard,* 385 Pa. 312, 123 A. 2d 258. We are unwilling to say under the facts and circumstances of this case that the call of a case for trial the day after the indictments are returned is a violation of any constitutional rights the accused may enjoy.

The case of *Commonwealth v. O'Keefe,* 298 Pa. 169, 148 A. 73, relied on by appellant, has no application to the instant case. There, the accused was arrested, indicted and tried the same day. Here, the accused had weeks in which to consult with counsel and prepare his defense.

Judgments of sentences are affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentences or any parts thereof which had not been performed at the time the appeal in this case was made a supersedeas.