## Orbin *v.* Stevens.

*Equity—Specific recovery of a battle flag—Failure of plaintiff to show .title.*

A bill in equity will lie for the detention of a personal chattel of peculiar value like a battle flag, where the law can afford no adequate ،compensation in damages, provided that title in the plaintiff be shown.

A battle flag presented to the 85th Regiment of Pennsylvania Volunteers ·while in the service of the United States was the property of the regiment ·while in the service and after their discharge the title to said flag remained in the surviving members. No assignment or transfer of the flag having been made by the surviving members as such, *held*, on a bill brought by :an unincorporated regimental association composed of a part of the sur- ·viving members, less than a majority, to recover possession of the flag · ·from defendant, also a member of the regiment, that no title to the flag ،was shown in the association and that the bill must be dismissed.

Argued April 18, 1900. Appeal, No. 169, April T., 1900, ،by plaintiffs, in a suit of George Orbin, S. L. McHenry and William A. Pratt, representing the 85th Pennsylvania Regi- mental Association, against John G. Stevens, and such others ،to the complainants unknown, as may appear to be joined with him in the purposes and designs of the said John G. Stevens as ،set forth in the bill of complaint, from decree of C. P. Fayette County, sitting in equity, No. 269, dismissing plaintiffs' bill. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by BEAVER, J.

Bill for injunction and recovery of a battle flag. Before REPPERT, P. J.

The facts sufficiently appear from the opinion of the court ،below :

The 85th Regiment of Pennsylvania Volunteers was organ- ized and entered the military service of the United States in November of 1861. It was composed of companies from Wash- ington, Fayette, Greene and Somerset counties and one com- pany from the city of Pittsburg. After its organization the regiment went into camp at Uniontown, Fayette county, and while there, shortly after its organization, was presented with .a flag by the ladies of that place. The flag remained with the

regiment throughout the war until it was mustered out of the service in the city of Pittsburg in November of 1864. After the regiment was discharged the flag was brought to Uniontown by James McCune, a member of company " D " of the regiment, and was delivered by him in December of the same year to John G. Stevens, the defendant. May 30, 1873, a meeting of the survivors of the regiment, who then numbered over 500, was called at Uniontown. About ninety attended. At this meeting the plaintiff association was organized. A president and secretary were elected and a constitution and by-laws adopted. The object of the organization seems to have been to hold and conduct annual reunions of the surviving members of the 85th regiment and to that end invitations to these reunions are sent by the association to the surviving members of the regiment so far as known. In 1881 the minute book which also contained the constitution and by-laws was lost and has never been recovered nor have the constitution and by-laws been replaced. Since 1883 the minutes of the meeting have been preserved. The constitution and by-laws adopted at the meeting in 1873 were signed by those present or by a part of them. It does not appear that any further signatures were added at any subsequent meeting, or that the constitution and by-laws were ever changed or amended. The testimony affords no information as to how membership in the association could be acquired under the constitution and by-laws, but from the practice followed at the first meeting it may be presumed that at least one of the requirements was that the members should sign the constitution and by-laws. Beyond the practice then followed the testimony does not disclose the formalities attending admission to membership, its duties and liabilities. Nor, beyond what is above stated, was any list offered or shown of those who have asked for or been admitted to membership. There is a list or register, however, approximately at least of those who have attended at various times the annual reunions of the surviving members of the regiment conducted by the association since 1873. This list, for obvious reasons, cannot be accepted as the membership of the association. Attendance at a reunion of the surviving members of the regiment in response to an invitation issued by the association would certainly not impose upon those attending any of the duties, responsibilities

or liabilities of membership in the association nor does the testimony show any such contention on the part of the plaintiff. The attendance at any one of these meetings has not exceeded 125 of the surviving members of the regiment. While all the surviving members of the regiment, honorably discharged, are eligible to membership, it seems that but comparatively a small number, less than one fifth, have ever enrolled themselves as members of the association.

The second meeting of the association was held at Brownsville in 1874. The flag had continued in the possession of Stevens from the time he received it in 1864. In 1874 at or about the time of the reunion at Brownsville, Stevens delivered the flag to James Swearer of that place. As to the terms upon which the flag was delivered to Swearer by Stevens there is no testimony of any one present at the time except that of Stevens. He says Swearer came to him to borrow the flag for the Brownsville reunion; that he hesitated to loan it to him, but that he did let him have the flag on condition that it should be returned to him after the reunion. At this time the field, stars and stripes of the flag remained. A piece of a bullet was imbedded in the stem and a bullet was imbedded in the spear. The flag was not returned after the reunion and it did not again come into the possession of Stevens until at Scottdale in 1889. He retained possession of it ever since. In 1890, Stevens took the flag to the reunion at Uniontown; in 1891 to Waynesburg and in 1892 to Wilkinsburg. Since that time Stevens has retained the flag in his possession and refuses to deliver it to the color-bearer of the association. This bill is filed by the association to obtain possession of the flag, the bill alleging that the flag came into the possession of Stevens in 1892 as color-bearer of the association and that he now retains it unlawfully from his successor. Stevens denies that he is now or ever was a member of the plaintiff association; that he ever accepted or held the office of color-bearer or that he obtained possession of the flag in 1892 by reason of his acceptance of such office. That while he has attended many of the reunions held by the association he has attended them as a surviving member of the regiment and not as a member of the association; that when he recovered the flag at Scottdale none of the stars or white stripes were left and the condition of the flag was very dilapidated, caused by

pieces being torn off for mementoes; that he has refused to give up possession of the flag in order that what is left of it may be preserved; that he claims no ownership or interest in the flag beyond that of a surviving member of the 85th regiment; that he is willing and desires that the flag should be placed in some secure place where it can be seen and preserved for the members of the regiment and posterity.

This desire does not seem unreasonable in view of the testimony. For in all probability had it not been for the care of the flag taken by Stevens it would not now be in existence. At the taking of the testimony counsel for Stevens offered to deposit the flag with the Fayette County Historical Society or with any other custodian agreed upon that would secure its safe preservation, and under such conditions as would enable the survivors of the regiment to have it presented at the reunions held by the association, and insure its safe care and return to the custodians. This offer was made pursuant to a suggestion of the court at the hearing upon the motion for a preliminary injunction. Although not in evidence, we may be permitted to state that many of the surviving members of this regiment, and many who claim membership in this association have expressed a desire that such an arrangement be effected, an arrangement honorable alike to all concerned, and insuring the preservation of the flag for the survivors of the regiment that made it glorious, and their posterity, and thus ending a litigation which is deplored by those interested almost unanimously.

### FINDINGS OF FACT.

1. The 85th Regiment of Pennsylvania Volunteers was organized and entered the military service of the United States in November of 1861. It was mustered out of the service in November of 1864.

2. At or about the time the regiment was organized the flag in dispute was presented to the regiment by the ladies of Uniontown. The flag remained in the regiment until it was mustered out of the service in 1864, when it was brought to Uniontown by James McCune, a member of the regiment, and by him delivered to John Stevens, also a member of the regiment, in whose possession it has been ever since, except the years 1874 to 1888 inclusive.

3. The 85th Regimental Association, unincorporated, was organized May 30, 1873, at Uniontown, and is composed of a part of the surviving members of the said regiment. Its object was to hold and conduct annual reunions, with appropriate exercises, at various convenient places, of the surviving members of the regiment. It adopted a constitution and by-laws which were lost in 1881, and have never been replaced. The number and names of its members are not disclosed by the testimony. So far, however, as the testimony shows, not over ninety members of the regiment were ever enrolled as members of the association. The surviving members of the regiment in 1873 numbered over 500 and now number about 470.

4. The said association, since its organization, has held and conducted annually reunions of the surviving members of the regiment, to whom, so far as known, invitations were sent by the association.

5. The flag in dispute was the property of the 85th Regiment of Pennsylvania Volunteers while in the service of the United States. After their discharge the title to said flag remained in the surviving members of the regiment.

6. No assignment, transfer or conveyance of the title to said flag from the surviving members of the said regiment to the plaintiff association has ever been made by the surviving members of said regiment, or by any of them, by vote, resolution or otherwise, at any meeting held by the plaintiff association, or at any other time or place. At no meeting of said association were more than a fourth of the surviving members present. It is manifest that at none of the meetings could such action have been taken by a majority of the surviving members of the regiment. There is no evidence that such action was ever attempted.

### CONCLUSION OF LAW.

1. The plaintiff association having shown no title to the flag in question its bill must be dismissed.

### DECREE.

This matter came on to be heard and was argued by counsel. And now, March 12, 1900, upon consideration, it is ordered, adjudged and decreed that the bill filed in this case be dismissed at plaintiffs' costs.

On October 23 last, a paper purporting to be a copy of a resolution passed at a meeting of the plaintiff association was served on me by the secretary of the association. I am informed by a member of the regiment who was present at the meeting that this resolution was prepared by Edward Campbell, of counsel for plaintiff, who presided at the meeting. The resolution itself, a copy of which is attached, furnishes sufficient evidence of the truth of his statement. Upon this paper and the motives that inspired it I make no comment. I desire simply to state the facts.

The bill was filed March 4, 1898. The case came before me for trial the latter part of November, 1898. The previous proceedings in the case had been before President Judge MESTREZAT. At the time mentioned the court was engaged in the trial of equity causes. Mr. Fullmer, the president of the plaintiff association, and Mr. Guiler, counsel for defendant, live in Allegheny county, and at their request and to suit their convenience a night session of the court was held at which the testimony was taken. On the conclusion of the testimony, owing to the lateness of the hour, the argument was postponed at counsels' request. Subsequently, while engaged in the trial of other causes, I was asked to hear the argument. In order to accommodate them and to expedite the case, the arguments were made during the noon recess. At that time, as I recollect, the notes of testimony had not been transcribed, and neither counsel had prepared briefs. I did not have the papers in the case at the argument. I do not recall whether or not counsel had them. At the conclusion of the argument counsel were requested to prepare briefs and to hand them, with the testimony when transcribed and the papers already filed, to me. The court stenographer had his notes of testimony marked filed, and gave them to me promptly. Briefs of counsel were not furnished to me until it was too late for the case to be taken to the Supreme Court in May of 1899, and the papers were not handed me until March 5, 1900, and not until after I had made repeated requests for them of the two counsel for plaintiff. On the very afternoon when this resolution purports to have been passed a committee of three gentlemen representing the plaintiff association came to my office and requested that the flag, in the custody of Mr. Stevens, be brought upon the stage at

the evening meeting. Of course, this request was complied with. In talking the matter over these gentlemen learned for the first time, as they stated, of the suggestion for settlement made by Judge MESTREZAT and above noted. They expressed entire satisfaction with the suggestion and a hope that it might be carried into effect, and that nothing further be done until at least an effort was made in that direction. In the latter part of 1899, counsel for defendant informed me that no proposal looking to a settlement had been made to him, and that the proposals made by him had been rejected. I then requested counsel to hand me the papers, which was finally done March 5, as above stated.

Plaintiffs appealed.

*Errors assigned* were . (1) in dismissing plaintiffs' bill. (2–5) In not categorically or otherwise sufficiently answering the fifth, sixth, second and third requests of plaintiffs for findings of law, which requests were as follows: " 5. Was or was not the said regimental standard in the possession, custody and control of the said association of the survivors of the said 85th regiment, after the discharge of the said regiment from the military service of the United States; 6. Was or was not the said regimental standard ever committed to the care and custody of the defendant as color-bearer, duly elected by the said survivors of the said regiment. 2. If the defendant received the regimental colors in controversy in this case, as color-bearer of the same, in pursuance of the election of the said defendant, by the said survivors of the said regiment, according to the rules and regulations of the said survivors concerning the same, is it, or is it not, the legal duty of the said defendant to return the said colors to the said survivors of the said regiment. 3. Has or has not the defendant any legal, equitable or moral right to hold, keep or detain the said colors against the claim, wish, will and demand of the majority of the survivors of the said 85th Regiment of Pennsylvania Volunteer Infantry." (6) In not entering decree that defendant, John C. Stevens, forthwith deliver the flag of the 85th Regiment of Pennsylvania Volunteer Infantry to the plaintiffs, and pay the costs of this action.

*Edward Campbell*, with him *A. F. Cooper* and *J. Q. Van Swearingen*, for appellants.

*W. G. Guiler*, with him *W. W. Parshall*, for appellees.— The appellants in this case, having alleged in their bill that the flag belonged to the association, the law imposes upon them the necessity of establishing its title and its right to the exclusive possession. This was held to be the rule by the Supreme Court in Reinheimer v. Hemingway, 35 Pa. 432. The plaintiffs here have not even attempted to establish any such title or right of possession in it.

We submit that the appellee, John G. Stevens, being in possession of this flag, has the exclusive right of possession of the same as against all persons, except the other joint owners of the same, and as to them, he has the right of possession to it in common with them, and we claim that we are sustained in this position by the Supreme Court in Agnew v. Johnson, 17 Pa. 373.

The court below held that it was incumbent on the association to show title to the flag in question, and having utterly failed to do so dismissed the bill; in this, we submit, there was no error, and the decree of the court should be affirmed.

OPINION BY BEAVER, J., May 24, 1900:

Referring to the findings of fact and opinion of the court below, which will doubtless be given in full in the report of this case, it may be remarked:

1. The plaintiff's bill was dismissed not because of want of jurisdiction. It is distinctly recognized that equity may be invoked for the purpose of securing the result at which the plaintiff aimed in the filing of its bill in a proper case. In McGowin v. Remington, 12 Pa. 56, where the English cases are reviewed at some length, and where Fells v. Reid, 3 Ves. 70, in which plaintiffs prayed for the restoration of a silver snuff box used for many years by a society as the symbol of their association, which was deposited with the defendant as a member of the society upon certain terms, to be redelivered upon the happening of certain events, is especially commented upon, it was held that in equity "the inquiry must be whether the law affords adequate redress by a compensation in damages where the complaint is of the detention of personal chattels. If not, the aid of a court of chancery will always be extended to remedy the injury by decreeing a return of the thing itself." This has been followed in many later cases and, as the principle was

not doubted in the court below nor disputed by the defendant here, need not be further discussed.

2. The plaintiff association being unincorporated, the original parties, as set forth in the bill, when it was filed, were properly used to represent the association: Singing Society v. Turn-Verein, 163 Pa. 265. The names of the individuals representing the association were, on motion of the plaintiff, stricken from the bill as plaintiffs, but as this seems to have been done at the suggestion of the court below we would have no hesitation in permitting them to be restored to the record, if that were necessary to a proper disposition of the case.

3. It is conceded that the flag, which is the subject of the present controversy, having been presented to the regiment as an organization, which was under no obligation to deposit it when it was mustered out of service either with state or national authorities, belonged to all the members while in service and to the survivors, after their term of service ended, jointly. The defendant is one of the survivors of the regiment and his interest, from a legal standpoint, in the flag is no more than, but is just the same as, that of any other survivor. His right to its custody is no greater than, but just as great as, that of any one of the survivors. If he had originally secured the custody and control of the flag, under the circumstances alleged in the bill, as color-bearer of the association, subject to the trust, express or implied, that it should be delivered to his successor in office, it would undoubtedly be his duty to surrender it in accordance with the terms of the trust governing its custody, but the court below does not so find, and, after a careful reading of the testimony, we are convinced that it would not have been justified in so finding. The defendant seems to have had, perhaps because of the local associations which surrounded it, a peculiar veneration and affection for this flag. He kept it while in service at times in his own tent. He was not mustered out with his regiment, being at the time on peculiarly important detached duty, but upon his return a comrade in company with some twenty others came to his father's house and delivered the flag into his special custody " to keep and take care of." This is not denied and it is not alleged that any one of his comrades who thus joined in placing it in his care and custody is here complaining. The findings of fact of the court below as to the organization of the regimental association seem

to be fully warranted by the testimony. The rules, regulations or by-laws, if there ever were any, have been lost and no testimony as to what they were has been presented. The plaintiff assumes ownership of the flag because of the organization of the regimental association by about ninety of the survivors of the regiment in 1873, but it is quite clear that each one of the ninety or more who participated in the organization could not have transferred thereto more than his interest in or title to the flag, and even if this had been done, it would not have vested in the association more than the undivided one-fifth interest therein, there being about 470 survivors. The sixth finding of fact as to the lack of any transfer of title, by the survivors of the regiment or even of those who acknowledge themselves as belonging to the association to it, is fully warranted by the evidence. The legal conclusion arrived at seems, therefore, inevitable that " the plaintiff association having shown no title to the flag in question, its bill must be dismissed."

We fully sympathize with the members of this association in their desire to see their battle scarred and tattered standard in safe custody. The defendant, however, has apparantly only the same desire. He seems to have good cause for his anxiety in regard to the safety of what remains of the flag. It is not denied that on the occasion when he first allowed it to pass out of his possession, as he supposed temporarily for a legitimate purpose, the flag was mutilated and practically destroyed. To use his own expressive language in one of his answers as a witness to a question of counsel, " When they borrowed that flag from me, the field was all there and the stars were all there in it and there was a piece of a bullet imbedded in the stem and in the spear a bullet was imbedded and the stripes were all there, so that you could make out that it was a flag; and when I got it back at Scottdale nobody could make out what it was; there wasn't a star in it nor a single white stripe on it. . . . Half of the bullet was picked out of the spear and I wouldn't have had that done for all the flags in the country." It is not ours to dictate or even suggest the final disposition to be made of this flag, but the efforts of the court below to secure a safe and permanent place for its custody are entirely commendable. Upon a careful consideration of the whole case, the decree of the court below dismissing the plaintiff's bill is affirmed and the appeal dismissed at the costs of the appellant.