## In re WAGNER.

(District Court, E. D. Pennsylvania.  May 14, 1914.)

No. 4831.

1. MORTGAGES (§ 233*)—ASSIGNMENTS—EQUITABLE ASSIGNMENT.

Where an attorney, who received money from a client to be invested in a mortgage, bought a mortgage therewith which had been executed in his favor, but did not assign the mortgage to the client, and thereafter held it in his own name, he held the legal title only, and the client was in equity the real owner and could have compelled an assignment.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 618, 619; Dec. Dig. § 233.*]

2. MORTGAGES (§ 224*)—ASSIGNMENT—NECESSITY OF DELIVERY.

Where an attorney, having possession of a mortgage belonging to a client but standing in his name, executed assignments thereof to himself as trustee of an estate, and by himself as trustee to one of the heirs, but did not record or deliver them to such heir or any one else 'in her behalf, there was no completed assignment, though the mortgage, after the attorney had disappeared, was found in an envelope bearing an indorsement that it belonged to such heir, assuming that the indorsement was made by the attorney, especially where, subsequent to such assignments, the attorney made an assignment, though defective, to another party as security for an indebtedness, indicating his belief that the assignments in question were not effective.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 591–595, 597; Dec. Dig. § 224.*]

3. MORTGAGES (§ 257*)—ASSIGNMENT—CONSIDERATION.

An assignee of a mortgage which, though standing in her assignor's name, belonged to a third person was not an assignee for value, where the only consideration was a past debt owed by the assignor to an estate in which the assignee was interested.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 682–687; Dec. Dig. § 257.*]

In Bankruptcy. In the matter of George M. Wagner, bankrupt. On certificate of the referee regarding the ownership of a bond and mortgage. Order of the referee reversed, and trustee directed to deliver the instruments to Elizabeth Mumbower.

George B. Hawkes, of Philadelphia, Pa., for Elizabeth Mumbower.

Ernest L. English, of Philadelphia, Pa., for Annie E. Wilson-Perrigo.

J. B. McPHERSON, Circuit Judge. This controversy has to do with the ownership of a bond and mortgage for $900 that were found among the bankrupt's papers, and are now in the trustee's possession. Three claimants appeared, and each offered some evidence. The referee's report recites most of it, but does not contain findings of fact on several important matters. I have therefore examined the whole record, and from this and from certain notorious circumstances in reference to this bankruptcy about which the court cannot be ignorant, I find the facts to be as follows:

The bankrupt was a member of the Philadelphia bar; his principal business being the management of estates and other trusts, and the in-

vestment of money for numerous clients. They trusted his integrity implicitly, but for years he abused their trust and embezzled a great deal of money that came into his hands. About the time he was put into bankruptcy he disappeared, and his whereabouts is still unknown. He left his affairs in much confusion, and the trustee has found little property to answer the many claims, which aggregate a very large sum. Turning to the evidence taken before the referee, the other facts are these:

[1] On April 26, 1899, Mrs. Elizabeth Mumbower intrusted the bankrupt with $1,000 to be invested for her. Two years before she had given him another $1,000 for a similar purpose, and in 1904 she gave him $1,500 more, but the only subject now before the court is the transaction in April, 1899. He gave her a receipt for the money in question, stating that it was to be invested in a mortgage, and he used $900 of it to buy from himself a duly recorded mortgage in that amount executed in his own favor by Benjamin H. Duvall upon 1816 North Eighteenth street in the city of Philadelphia. The bond and mortgage bear the date of April 5th, but the difference in dates is of no importance, and there is no doubt that $900 of Mrs. Mumbower's money was thus lent to Duvall upon this particular security. What became of the other $100 does not appear. She never saw the bond and mortgage, and the bankrupt always kept them in his own possession. In October of the same year he sent her a letter saying that he had invested the whole $1,000 in this mortgage, and inclosing a check for six months' interest. Other payments of interest no doubt followed from time to time. Instead of assigning the security to Mrs. Mumbower, as he should have done, he continued to hold it in his own name as an individual. But of course he now held the legal title only, and Mrs. Mumbower was in equity the real owner and could have compelled him to assign the mortgage to her at any time. She neglected to take that step, however, and (as has been stated) she never saw any of the papers. But her neglect gave him no additional right against her, and impaired no right of hers against him. He held the naked legal title as her trustee, and as the equitable and the real owner she was able to assert her right against him whenever she chose.

[2] But she had been careless enough, or trustful enough, to allow him to continue in possession of the legal title, and thus had clothed him with power to make others believe that he alone was the true owner; and I agree therefore that, if he transferred his title to a bona fide assignee for value without notice, such assignee has the better claim. In that event, the equities of the claimants would be equal, and the legal title would give such an assignee the superior right. And this is the position which Mrs. Annie E. Wilson, now Mrs. Perrigo, claims to occupy, namely, the position of an assignee for value without notice. The referee sustained the claim, but, in my opinion, upon insufficient evidence. I do not think she has proved either that she is an assignee at all with a completed title, or that she is an assignee for value, although it is no doubt true that she had no notice of Mrs. Mumbower's equity until after the bankruptcy. Mrs. Wilson did not testify in her own behalf; her case depends wholly on two papers and a memo-

randum indorsed upon an envelope, all of them found among the bankrupt's effects.

The two papers referred to are in form assignments of the bankrupt's title. The second paper purports to have been signed and sealed by him on January 24, 1908, as substituted trustee òf Laurence Shuster's estate, and to have been acknowledged at some unspecified time in the same year, but it was never delivered to Mrs. Wilson (who is named as the assignee) or to any one else in her behalf, and it never was recorded, although this, of course, would have been equivalent to delivery. Why the paper was prepared may be conjectured with much probability, especially because we may fairly infer that the bankrupt was indebted to the estate of Laurence Shuster, deceased, in which Mrs. Wilson was interested as an heir. Two years earlier, on February 1, 1906, the bankrupt had signed, sealed, and acknowledged the first paper, which is in form an assignment of the same mortgage from himself as an individual to himself as "substituted trustee under the will of Laurence Shuster, deceased"; but this assignment also was not recorded, and both papers were retained in his own hands without being made known (so far as appears) to Mrs. Wilson or to any one interested in the estate. These papers, therefore, did not convey his legal title in the mortgage. They were neither delivered nor recorded, and without one of these acts they could not transfer the title. Remaining in his own hands and under his own control, they were susceptible of use upon any occasion that might arise, but until he actually used them they were merely instruments, no doubt in readiness to be employed but as yet wholly ineffective.

That the bankrupt regarded these papers in the light I have indicated is made more plain from what happened a year later. In December, 1909, he was heavily indebted to the estate of Jonathan Fox, of which he was administrator, and in that month he actually assigned this very mortgage (with other securities) to certain persons interested in that estate in order to secure his indebtedness to them. These persons presented the third claim to its ownership before the referee, but, as the assignment of December, 1909, turned out to be defective, the claim was disallowed and is not now insisted on. The bankrupt afterwards repossessed himself surreptitiously of the mortgage, and (as already stated) it was found among his papers after he disappeared. It is clear, therefore, that he did not intend to deliver the two assignments now in question until some need should arise, but merely prepared them for delivery in such an emergency.

[3] Neither was it proved that any value was given for either of the assignments now being considered. On the contrary, the fair inference is that whatever consideration may have existed was a past debt owed by the bankrupt to the Shuster estate, and this would not be sufficient. As I have already stated, Mrs. Wilson did not testify, and her silence makes the inference unavoidable that he received no present consideration.

The memorandum referred to remains to be considered. It is as follows:

"900. Bond and Mortgage. Benjamin H. Duvall et ux. Premises 1816 North 18th, belonging to Mrs. Annie E. Wilson."

These words are indorsed upon a document envelope, in which another envelope was inclosed; the latter containing the mortgage in question, the bond and warrant, and the two formal assignments already described. An indorsement upon the latter envelope states that the mortgage belongs to George M. Wagner. Who made these two indorsements, or when they were made, was not proved. No evidence was offered that they were in the bankrupt's handwriting, and therefore they cannot be regarded even as declarations made by him. All that the evidence establishes is that these memoranda appear upon certain envelopes that came into the trustee's possession; but, as I have just stated, there is nothing to show when or by whom the indorsements were made. But, even if they had been proved to be the bankrupt's own memoranda, I am unable to see how they could add anything of value to the papers themselves. It would still be necessary to show that something equivalent to delivery had taken place, or that they had been recorded, before they could take effect, for, until one or the other should be done, the bankrupt might safely make any written declaration he pleased with regard to the ownership of the mortgage. As long as these declarations and the papers themselves remained entirely within his own power, he was completely the master of the situation.

I am therefore of opinion that sufficient evidence was not offered to show that title to this mortgage had passed to Mrs. Wilson, and I find as a fact that no such title did actually pass. The result is that the earlier equitable title of Mrs. Mumbower must prevail. The order of the referee is reversed, and the trustee is directed to deliver to Mrs. Mumbower all the papers in his possession relating to the mortgage in question.