## Commonwealth v. Auman et al.

John G. Love, District Attorney, for Commonwealth.

A. C. Dale and S. D. Gettig, for defendants.

FLEMING, P. J., July 11, 1929.—This matter is before the court upon the several motions by the defendants to quash indictments found against them, charging larceny of goods and chattels from numerous hunting camps situated in this county.

The only reason assigned requiring discussion on our part is that whereby it is contended that, inasmuch as it is averred in such indictments that the goods and chattels alleged to have been stolen were the property of unincorporated associations, naming them, no crime has been alleged, it being the theory of defendants that such unincorporated associations cannot own personal property, and that, therefore, one of the essentials of the crime charged, to wit, the taking of the property of another, does not exist.

We feel that the defendants have been misled in the instant case by a wrong interpretation of our decision in Latrobe Hunting and Fishing Club *v.* Decker et al. [12 D. & C. 63], Court of Common Pleas of Centre County, Sitting in Equity, wherein we held that a voluntary association, not formed for religious, charitable, literary or scientific purposes, was incapable of receiving title to real estate and dismissed the bill which sought to compel the conveyance of real estate pursuant to an alleged agreement in writing. There is, however, a wide distinction between such case and the instant case. In the Decker case it was a voluntary association seeking to contract and endeavoring to have such alleged contract, which pertained to the conveyance of lands, enforced in chancery. No trust device appeared and we were there asked to do what was legally impossible. Title had not vested either actually or by implication. Real estate was the subject of the controversy and not personalty, as in the instant case, where all the actual elements of ownership admittedly exist, to wit, delivery, possession, control and right of disposition.

Blackstone defines larceny as the felonious taking and carrying away of the personal goods of another: 2 Sharswood's Blackstone's Comm., 229. Corpus Juris enlarges thereon by declaring larceny at common law to be the taking and carrying away from any place, at any time, of the personal property of another, without his consent, by a person not entitled to the possession thereof, feloniously, with intent to deprive the owner of his property permanently and to convert it to the use of the taker or of some person other than the owner: 36 Corpus Juris, 734.

Counsel for defendants contend that, inasmuch as it is the custom of hunters and sportsmen generally, who reside temporarily in camps, to bring to such camps articles of personal property which have served their purposes in their private homes, the delivery to such camps divests the donor of all ownership therein, and that because the camp is controlled by an unincorporated association, it, the camp, cannot take title to such personal property, and that the personal property from the date of such delivery is devoid of an owner, and that, therefore, none can be charged with stealing it. This is indeed a most unique theory, but one with which we cannot agree and one which is founded in false reasoning.

The property alleged, in the instant case, to have been stolen, is not contended to be the property of the defendants. We must, therefore, conclude it to be the property of "another" in the light of the definitions cited above. The indictment avers it to be the property of the unincorporated association specifically named therein. We have already pointed out that all the elements of ownership are admitted to have existed at the time the crime is alleged to have been committed. Only the theoretical contention that because it was originally the property of one of the individual members of the association but is now used and enjoyed in common by all, it is the property of no one, remains upon which to sustain the contention of the defendants. This we cannot do, if for no other reason than from the standpoint of public policy. Each year more and more of our citizens are turning to the woods for relaxation from their labors. Each year the hunting and fishing camps in our midst are increasing both in number and in value. Protection must be accorded these camps.

When the several members of these hunting camps deliver to their respective associations the articles of personal property used therein, it does not cause such article to be wholly devoid of an owner, but, on the contrary, the ownership vests in all members of such association. In Orbin *v.* Stevens, 13 Pa. Superior Ct. 591, a battle-flag had been presented to the 85th Regiment of

Pennsylvania Volunteers while in the service of the United States and was the property of the regiment while in the service, and after their discharge came into the custody of one of its survivors. An attempt was made by a group of survivors, other than the survivor who had custody of the flag, to secure it from him. Judge Beaver says: "The defendant is one of the survivors of the regiment and his interest, from a legal standpoint, in the flag is no more than, but is just the same as, that of any other survivor. His right to its custody is no greater than, but just as great as, that of any one of the survivors." By analogy, we therefore conclude that the same is true as to the ownership of the property alleged to have been stolen in the instant case. The regiment was an unincorporated association following the war. The hunting camp is also admittedly an unincorporated association. The flag was presented to the regiment. So, also, was the property herein alleged to have been stolen. The ownership in the property alleged to have been stolen is in all the members of the hunting camp under the restrictions as stated by Judge Beaver in Orbin v. Stevens, supra. It is yet the property of "another," as the definition of the crime states.

But defendants contend that the names of the members of the unincorporated association are not stated in the indictment as the owners of the property alleged to have been stolen. Only the name assumed by the association appears. Is this fatal to the indictment? Are the defendants prejudiced by this lack of individual names?

The averment as to ownership in an indictment for larceny is for the purpose of identifying the property: Com. v. Dingman, 26 Pa. Superior Ct. 620. Before the passage of the Act of March 31, 1860, P. L. 382, a variance between ownership averred in the indictment and the proof was fatal: Com. v. Martin, 5 Clark (Pa.), 245. Such variance since the act is amendable: Rosenberger v. Com., 118 Pa. 77; Com. v. Livingston, 5 Dist. R. 666.

In the last cited case the indictment alleged that the goods stolen were the property of J. R. Armstrong, whereas proof was disclosed that the property in fact was owned by Armstrong and Stohl. After defendant closed his testimony, the district attorney asked leave to amend the indictments to include the name of Stohl as one of the owners of the property. This was allowed by the court and a verdict of guilty was returned. In Com. v. Dingman, supra, one of the counts laid the ownership of the property in "divers persons to this grand inquest unknown." Objection was taken to this form of allegation of ownership, which elicited from the court the statement that the averment as to ownership in an indictment for larceny was only for the purpose of identifying property. We, therefore, conclude that, since the indictment can be amended under the Act of 1860, with reference to the name or description of any person or persons or body politic or corporation therein stated or alleged to be the owner or owners of property stolen, the indictments in the present case are sufficient for the purpose of pleading and can be amended on the trial of the case to include the individual names of all such members of the hunting club as would be disclosed by the Commonwealth's testimony.

The failure to register the fictitious name of the hunting club according to the provisions of the Act of June 28, 1917, P. L. 645, and its supplements, does not affect the sufficiency of the indictment herein. It has been held that such statute is wholly a penal statute in itself and must be strictly construed and does not cover any case not clearly embraced within its terms: Christy v. Robinson, 2 D. & C. 447.

And now, July 11, 1929, the several motions to quash the several indictments are dismissed.