## Diehl et al., Trustees, v. Mock et al., Execs.

*Reiley & Reiley*, for plaintiffs.

*Richard C. Snyder*, for defendants.

*Paul A. Koontz* and *John A. Minnich*, for intervening creditors.

WRIGHT, P. J., April 2, 1943. — The defendants named in this bill of complaint are the executors of the last will and testament of Charles R. Mock, deceased. An appearance was entered but no answer filed, for which reason plaintiffs entered an order that the bill be taken pro confesso. Before a final decree was entered, upon petition of certain creditors of the estate of Charles R. Mock, the order that the bill be taken pro confesso was stricken off, and the petitioning creditors were permitted to assert their rights by intervention. An answer was filed and the matter came on for hearing upon bill and answer. Instead of taking testimony, the parties agreed upon a statement of facts, from which we are to prepare our findings. Requests for conclusions of law have been filed and the matter is now ready for the court's adjudication.

## Pleadings and issues raised

The question raised by the pleadings is whether, under the circumstances of this case, the equity court will order that plaintiffs hold legal title to a certain mortgage standing in the name of Charles R. Mock, deceased, with the direction that the said mortgage be assigned to plaintiffs.

## Findings of fact

1. From July 23, 1903, until July 23, 1941, the date of his death, Charles R. Mock was a member of the Bar of Bedford County, Pa.

2. On September 27, 1937, Charles R. Mock made an individual loan of $888.96 to Roy Fickes and Rosie Fickes, his wife, of Kimmell Township, Bedford County, said loan being secured by a mortgage bearing same date, covering a tract of land in the township and county aforesaid, payable September 24, 1938, with interest. The said mortgage was duly recorded in the Office of the Recorder of Deeds in and for Bedford County, in mortgage book no. 40, p. 315.

3. On and before the date of the execution of the mortgage, and thereafter until December 27, 1940, Charles R. Mock served as one of the trustees of Bedford Lodge No. 320, Free and Accepted Masons.

4. On and before the date of the execution of the said mortgage, D. Cress Reiley, a member of the Bar of Bedford County, was secretary of the lodge, and has served in that capacity continuously since.

5. Sometime prior to August 31, 1940, Charles R. Mock agreed with D. Cress Reiley, the secretary hereinbefore mentioned, that the mortgage aforesaid be transferred to the trustees of Bedford Lodge No. 320, Free and Accepted Masons, for the consideration named in the mortgage, namely, $888.96, interest to run from August 31, 1940. A check in the proper amount was drawn by the secretary, signed by the proper officers, authorized at a stated meeting of the lodge, and delivered to Charles R. Mock.

6. Charles R. Mock presented the check to the treasurer of the lodge in due time and received therefor the sum of $888.96.

7. Although Charles R. Mock had agreed to transfer the mortgage to the trustees aforesaid, and had agreed to execute an assignment thereof on the record of the mortgage, and had received full consideration therefor, yet he neglected and failed to place on the record a proper assignment.

8. The mortgage was represented as one of the assets of the lodge in the report of the trustees of the lodge filed December 12, 1940, Charles R. Mock being one of the trustees and signing the same as trustee.

9. After the death of Charles R. Mock, the complainants discovered that no assignment of the mortgage had been placed upon the record thereof, and that the mortgage appeared on the record as the property of the estate of Charles R. Mock, instead of the property of Bedford Lodge No. 320, Free and Accepted Masons.

10. The complainants requested Mary D. Mock and Donald G. Mock, executors as aforesaid, to execute an assignment of the mortgage, but they refused and continue to refuse to make the said assignment.

11. The estate of Charles R. Mock is insolvent.

12. On December 12, 1940, the trustees of the lodge filed their annual report of the assets of the lodge and listed the mortgage aforesaid as one of the assets; and on January 9, 1941, an auditing committee, appointed by the proper officer of the lodge, examined, audited, and approved said report.

13. On June 5, 1941, Charles R. Mock prepared, executed, and presented to the First National Bank in Bedford a financial statement in which he listed as assets of his estate notes et cetera receivable in the amount of $1,500; and said bank is one of the creditors of the estate of Charles R. Mock, now deceased.

14. On page 59 of the cash book of Charles R. Mock, under date of August 31, 1940, appears the following credit: "Bedford Lodge No. 320 888.96," and the following debit: "Bedford Lodge Fickes Mort. 888.96." On the ledger of Charles R. Mock under the heading "Bedford Lodge No. 320 F. and A. M." appears the following entry: "Fickes Mort. (59) 888.96, August 31st, 1940, Cash for Inv. (59) 888.96."

## Discussion

The theory of plaintiffs in this case is that the transaction between Charles R. Mock and Bedford Lodge No. 320 F. and A. M. constituted a contract for the sale of personal property which, under the circumstances, an equity court should enforce. The mere fact that a remedy at law exists is not sufficient to oust equitable jurisdiction. The real question is whether that remedy is adequate and complete: Henry's Pennsylvania Equity Jurisdiction and Practice, sec. 33. Equity takes jurisdiction to enforce a sale of personal property only in rare cases and upon exceptional grounds: Meehan v. Owens, 196 Pa. 69. The general rule does not apply where, by reason of the unique nature of the property, it has no ascertainable market value, and an action at law, which would allow damages only, is therefore inadequate: Orbin v. Stevens, 13 Pa. Superior Ct. 591. It has also been held that where the wrong is a betrayal of confidence equity will decree restitution, which may be specifically enforced: Steinmeyer, Exec., v. Siebert et al., 190 Pa. 471.

Charles R. Mock stood in a fiduciary relationship with the lodge. He was not only a trustee but also a member of the bar. It is evident that his intention was to make the lodge the owner of the particular mortgage in question. In both his cash book and ledger appear notations that the lodge's money was received by him for that specific purpose. In the trustee's report, which he signed, the mortgage is listed as one of the

assets of the lodge. The only thing he did not do was to make a formal assignment. Under these circumstances we feel that the lodge had an equitable property interest in the mortgage.

Upon very similar facts an equitable assignment was declared to exist: In re Wagner, 213 Fed. 682. In that case an attorney received money from a client to be invested. The money was used to buy a mortgage, legal title to which was taken in the name of the attorney. It was held that the client was in equity the real owner and could compel a transfer. Counsel for defendants attempts to distinguish that case on the ground that the money was traced into and actually created the mortgage, i. e., a constructive trust. The court's reasoning does not seem to be based on that theory. Further, it might well be argued that the circumstances in the present case establish an express trust. Such a trust is merely a fiduciary relationship which arises as a result of the manifestation of an intention to create it: A. L. I. Restatement of Trusts, §2. No particular form of words or conduct is necessary. Mr. Mock was a trustee for the lodge. He owned a mortgage which he desired to sell to the lodge, which was his beneficiary. The necessary arrangements were made, and payment was made in full. Not only was the transaction noted in his cash book and ledger, but the trustee's report which he signed constituted a written declaration to the lodge itself that the mortgage was the lodge's property. It was not necessary to declare the terms of the trust as these were already fixed by the existing relationship. Certainly this trust theory supports our conclusion that an equitable property right existed.

Under the circumstances we do not feel it necessary to decide whether or not a mortgage is a unique article. On the one hand, a mortgage is a conveyance of a specific parcel of land, different from all others. On the other hand, the conveyance is only as a pledge for debt and becomes void on the payment thereof. We do

not agree with the argument of plaintiff's counsel that the mortgage was unique because it was a six percent loan with adequate security and such loans are not presently available, or because the lodge desired an interest-bearing loan, not the principal. It must be borne in mind that the mortgage was past due.

The strongest argument of counsel for defendants is that the remedy at law is inadequate only because of the insolvency and that, if we grant this mortgage to the lodge, we will be preferring one creditor over others. It is true that insolvency alone is not a ground for equitable interference: Heilman v. The Union Canal Co., 37 Pa. 100. However, in the present case the insolvency does not stand alone. The lodge has an equitable property interest and does not occupy the position of a creditor, but rather the position of an owner. The fact that damages at law may not be fully collected because of insolvency is a factor which should be considered in specific enforcement cases: A. L. I. Restatement of Contracts, §361 (d).

Reliance is placed upon the A. L. I. Restatement of Contracts, §362, which pronounces that specific enforcement will not be decreed if it will constitute a preference of one creditor over others which is inconsistent with the purpose of rules of law governing the distribution of insolvent estates. This proposition must be considered in the light of the comment thereon wherein it is pointed out that the buyer of goods may have not only a contractual right to the transfer thereof, but also a property right in the particular goods, and that in such cases the law protects the interest of the property owner even though the obligor is insolvent. Similarly, in Williston on Contracts, sec. 1420, it is pointed out that if, under the circumstances apart from the insolvency, equity regards the plaintiff as having an interest in the property in question, specific enforcement of the obligation to transfer the property should be granted despite the insolvency; that bank-

ruptcy courts, since they possess equity powers, invariably give the property itself to a claimant who possesses an equitable property right, rather than relegate him to a claim for damages.

If it had been shown that the intervening creditors relied upon Mr. Mock's ownership of this particular mortgage, we might have been presented with a different situation. As a matter of fact, it is probable that they did not even know about it. Because of the fiduciary relationship which existed, we do not propose to hold that the lodge officials were guilty of negligence or laches in not seeing to it that the mortgage was formally assigned. Bouvier says that, in its broad sense, the term equity means natural justice, and we conscientiously feel that our decision will accomplish such result in this case.

### Conclusions of law

1. The equity court will order specific performance of a contract relating to personal property where the circumstances establish an equitable property right in the claimant and the remedy at law is not adequate and complete because of insolvency, as in this case.

2. The facts in this case establish an equitable assignment of the mortgage in question.

3. The mortgage of Roy Fickes and Rosie Fickes, his wife, to Charles R. Mock covering a tract of land in Kimmell Township, Bedford County, dated September 27, 1937, and recorded in Bedford County Mortgage Book no. 40, p. 315, is the property of the trustees of Bedford Lodge No. 320, Free and Accepted Masons.

### Decree nisi

Now, to wit, April 2, 1943, upon consideration of the foregoing case, it is ordered, adjudged, and decreed that plaintiffs, Clarence A. Diehl, William B. Smith, and Joseph P. Allen, trustees of Bedford Lodge No. 320, Free and Accepted Masons, hold title to the mort-

gage given by Roy Fickes and Rosie Fickes, his wife, to Charles R. Mock, covering a tract of land in Kimmell Township, Bedford County, dated September 27, 1937, and recorded in Bedford County Mortgage Book no. 40, p. 315, and Mary B. Mock and Donald G. Mock, executors of the last will and testament of Charles R. Mock, deceased, are directed to grant and convey the said mortgage to plaintiffs by executing a good and sufficient assignment of the same, costs to be paid by the estate of Charles R. Mock, deceased. Unless exceptions are filed within 10 days after notice of the entry thereof, this decree nisi shall be entered as the final decree.

NOTE.—No exceptions having been filed within the prescribed period, the foregoing decree nisi became the final decree.